# CHARLESTON.

## MORGAN *v.* OHIO RIVER R. CO.

Submitted January 13, 1894—Decided March 19, 1894.

| | |
|---|---|
| 39 | 17 |
| 40 | 424 |
| 39 | 17 |
| 41 | 132 |
| 41 | 546 |
| 39 | 17 |
| 42 | 298 |
| 39 | 17 |
| d46 | 149 |
| 39 | 17 |
| f48 | 44 |
| 48 | 403 |
| 48 | 405 |
| 39 | 17 |
| 49 | 18 |
| 39 | 17 |
| 54 | 235 |
| 54 | 615 |
| 39 | 17 |
| 58 | 522 |
| 39 | 17 |
| 66 | 84 |

1. JUDGMENT—CIRCUIT COURT—CERTIORARI.

    A judgment of a Circuit Court upon a writ of *certiorari* reversing a judgment of a justice, setting aside the verdict of a jury on which the judgment was based, and granting a new trial, is a final judgment, though it retain the case for re-trial, and can not be set aside on mere motion at a subsequent term.

2. JUDGMENT—OBJECTION—CERTIORARI.

    After such judgment, the objection that the *certiorari* was not applied for within ten days after the judgment, comes too late to avail.

3. WRIT OF ERROR—RECORD.

    A writ of error by one party brings up the entire record, and, if any error exist to the prejudice of an appellee, it may be corrected, whether it be in the judgment to which the writ of error was taken or another in the case.

4. CERTIORARI—RECORD.

    A writ of *certiorari* is taken not within ten days after the judgment. The defendant to it will be given the benefit of that de-

fence in this Court, though the record merely show that the case was heard in the Circuit Court on the record and proceedings, without showing any motion to quash or dismiss.

5. CERTIORARI—RECORD—PRESUMPTION.

Where such writ is not applied for within ten days but within ninety days after the judgment, and the record shows no excuse for not sooner applying, no presumption arises from the mere grant of the writ that good excuse was otherwise shown. The excuse for not applying within ten days for the writ must always appear in writing as part of the record.

V. B. ARCHER and WARREN MILLER, for plaintiff in error.

I.—*Appearance of defendant cures all defects in writ and irregularities in process.*—3 Cr. 496; 18 Wall. 298; 15 W. Va. 609; 30 W. Va. 18, 19; 16 W. Va. 109; 3 W. Va. 386; 1 Wash. 153; 13 How. 150; 3 Pet. 459; 8 Wheat. 699; 4 Crane 428; 16 Gratt. 410; 25 W. Va. 692.

II.—*Injury does not constitute* prima facie *presumption of negligence.*—25 W. Va. 571; 35 W. Va. 562; 9 West C. Rep. 112; 27 Vt. 643; 16 Ill. 198; 39 Ill. 451; 40 Ia. 347; 14 Ind. 30; 42 Miss. 603; 50 Miss. 572; 35 Mich. 507; 35 Mo. 309; 4 Jones L. 432; 8 Nev. 111; 35 Ia. 191; 78 Ky. 421 : 26 Minn. 434; 39 Ark. 413; 40 Ark. 336.

III.— *Where stock come upon the track at a point where the railroad company is not bound by statute to fence, it is not in the absence of negligence liable for injury to them.*—26 Ia. 549; 35 Ind. 515; 42 Ind. 173; 30 Ill. 451; 72 Ill. 537; 34 Ia. 506; 80 Ill. 72; 40 Ia. 337; 48 Mo. 558; 72 Ind. 107; 2 Am. & Eng. R. R. Cas. 648; 73 Mo. 465; 7 Am. & Eng. R. R. Cas. 558; 79 Mo. 196; 79 Mo. 432; 91 Ind. 295; 93 Ind. 254; 94 Ind. 245; 96 Ind. 450; 26 Tex. 604; 37 Ohio 554; 7 Am. & Eng. R. R. Cas. 588; 73 Mo. 456; 50 Miss. 572.

N. C. PRICKITT and R. F. FLEMING, for defendant in error cited 35 W. Va. 333; 27 W. Va. 540; 30 W. Va. 740; 1 Am. and Eng. Ency. of Law 621 and note 5; 1 Bl. Judgmts. §§ 307, 308; Code W. Va. c. 110; Id. c. 50 ss. 164, 174.

BRANNON, PRESIDENT:

James B. Morgan recovered a judgment for money against the Ohio River Railroad Company upon the verdict

of a jury before a justice, and the company obtained a writ of *certiorari* from the Circuit Court of Jackson county to reverse said judgment for error; and the Circuit Court did reverse it, and set aside the verdict, and granted a new trial, and retained the cause for re-trial. At a subsequent term the Circuit Court set aside its former order reversing the judgment and verdict, and dismissed the writ of *certiorari* as improvidently awarded, because, when it was applied for, more than ten days had elapsed since the judgment.

Our attention is at once arrested by the legal question whether the Circuit Court could set aside its judgment rendered at a former term reversing and setting aside the judgment of the justice and the verdict and granting a new trial. During the term the proceedings of the court are said to be in its breast, and it may modify or set them aside. *Cawood's Case*, 2 Va. Cas. 527; *Kelty* v. *High*, 29 W. Va. 381 (1 S. E. Rep. 561). After the close of the term, the court may modify or set aside any judgment or decree made at a former term, if it be interlocutory and not final in character. 1 Black, Judgm. § 308; *Wright* v. *Strother*, 76 Va. 857. But after the term the court has no power to modify or annul any final judgment or decree, except in law-cases for certain causes by writ of error *coram nobis* or motion under chapter 134 of the Code, and in chancery for certain causes· and in certain cases by bill of review or motion under said chapter. The final judgment or decree ends the case, and neither the parties nor the subject-matter in litigation are any longer before the court; and therefore any subsequent action in the case being without parties or subject-matter before the court is null and void, unless made under some lawful mode of review. *Green* v. *Railroad Co.*, 11 W. Va. 686; *Ruhl* v. *Ruhl*, 24 W. Va. 279; *Crim* v. *Davisson*, 6 W. Va. 465; *Hull* v. *Bank*, 15 W. Va. 328; *Battaile* v. *Maryland Hospital*, 76 Va. 63; *Johnson* v. *Anderson. Id.* 766; 1 Freem. Judgm. § 96. As to setting aside judgments of higher courts, see 7 Rob. Pr. (New) 127. (I speak above only as to the time of making orders affecting former orders, not of their correction nor of the mode, where alteration is proper, in which it is to be effected; it

sometimes requiring in chancery a petition for re-hearing, sometimes only a motion.)

What then is the character of the judgment of the Circait Court rendered upon the writ of *certiorari* reversing the judgment of the justice? Was it final or only interlocutory? If final, the judgment at a subsequent term annulling the former judgment and dismissing the *certiorari* is erroneous—yes, void—under the principles stated above. This action was taken on simple motion, not by any process of review. It was not, and could not have been, on writ of error *coram nobis* or motion in lieu of it, under Code, c. 134, nor motion to reverse a judgment by default under said chapter; as the judgment was rendered upon the appearance of both parties. That this judgment had the quality of finality is clear. It ended the *certiorari* as an appellate process upon the facts involved in the record. It annulled the justice's judgment and the verdict, leaving nothing more to be done in the *certiorari*, which is the test of finality. *Cocke* v. *Gilpin*, 1 Rob. (Va.) 27 ; *Vanmeter* v. *Vanmeter*, 3 Gratt. 148; *Camden* v. *Haymond*, 9 W. Va. 687; *Manion* v. *Fahy*, 11 W. Va. 493; *Ryan* v. *McLeod*, 32 Gratt. 367; *Rawlings* v. *Rawlings*, 75 Va. 83.

The new trial of the action commenced before the justice was upon another cause of action than that on which the *certiorari* was based, which was only error in tne former trial. It was not a re-trial or further trial of the *certiorari*, but of the former action. At most it was only to execute the order awarding a new trial, if even that could be said ; and this would not detract from the finality of the judgment, as it would not be considered as an action in the *certiorari*.

The ancient original writ of *certiorari* has in its history been put to divers uses, and the law touching it is, in some respects, complicated. In England it was used before judgment as a process by which a superior court removed from inferior tribunals causes pending before them, in order that more sure and speedy justice be done. Bacon, Abr. tit. "*Certiorari*," A ; Bouv. Law Dict. tit. "*Certiorari*." It was used after verdict and before judgment in *Mackaboy* v. *Com.*, 2 Va. Cas. 268 ; but its use to transfer cases before judgment from an inferior to a superior court has been

exceedingly limited in the Virginias; and I may say it is not at all so used in this state. This use is condemned in the *Dryden Case,* 20 W. Va. 105, and 15 W. Va. 270. In such a case it could be properly said that any order pending the proceeding made by the superior court would be interlocutory.

But the original writ of *certiorari* now so extensively used, and performing such important functions, in West Virginia, (the common-law original writ of *certiorari,* enlarged in its functions and efficacy by chapter 110, s. 2, Code) is an appellate writ—the counterpart of the writ of error. The writ of error corrects errors of record committed by courts of record proceeding according to the course of the common-law, whilst the original writ of *certiorari* corrects the errors of inferior tribunals in matters where the proceeding is not according to the course of the common-law, and where no appeal or writ of error lies. *Mackaboy* v. *Com.,* 2 Va. Cas. 268 ; *Wingfield* v. *Crenshaw,* 3 Hen. & M. 253; *Cunningham* v. *Squires,* 2 W. Va. 422; *Dryden* v. *Swinburn,* 15 W. Va. 234, 20 W. Va. 89 ; *Board* v. *Hopkins,* 19 W. Va. 84. (I do not refer to the ancillary writ of *certiorari* used by appellate courts to bring up more perfect record on suggestion of diminution.)

It seems that it has always been the law that when it is proper to review the proceedings of inferior tribunals, and the law has not provided redress by appeal, writ of error or other process, resort may be had to this writ of *certiorari* to prevent a failure of justice. *Meeks* v. *Windon,* 10 W. Va. 180; *Poe* v. *Machine Works,* 24 W. Va. 517 ; *Beasley* v. *Town of Beckley,* 28 W. Va. 81; *Mackaboy* v. *Com.,* 2 Va. Cas. 268 ; Harris, Cert. § 1.

So wide was the scope of the writ before the enactment of section 2, c. 110, Code (Eds. 1887 and 1891) that though that section retains it as it was before, and purports to apply it to additional cases, yet it may be questioned whether it made it applicable to any additional cases, though, beyond question, section three does widen its remedial agency in enabling it to correct errors in matters or points where before the statute it was ineffectual, as in the instance of review of evidence on matters of fact. Before that statute

the superior court upon *certiorari* could review all questions of jurisdiction and the regularity of proceeding, and decide all questions of law and fact, and render such judgment in case of reversal as the lower tribunal ought to have rendered; but it was at least doubtful, whether the court could do, what appellate courts can do on writs of error—consider evidence and reverse findings on facts by jury or court in proper cases [*Alderson* v. *Commissioners*, 32 W. Va. 458 (9 S. E. Rep. 863)]; but now the statute provides for embodying in the record evidence and all questions passed upon on the trial in the tribunal below, and requires the court above to pass upon all questions arising on law and evidence and render such judgment, as the court should have rendered, without remanding.

*Certiorari* being thus an appellate proceeding—a proceeding in error—it has for its object the review and reversal of the former decision; its basis or gravamen is the supposed error in that decision, and therefore, where a judgment of reversal is rendered, its mission is ended, the erroneous decision which it was invoked to abrogate is gone, and the judgment of reversal is a final one. That error—that alone —gave birth to the *certiorari*, was its sole subject-matter, and, when it is reversed, there is no longer any subject-matter for the *certiorari* to proceed further upon as an appellate process. The retention of the original action in the Circuit Court for re-trial after reversal of the judgment in it does not alter the case. That retention is not the object of the *certiorari*, but is the direction of the statute as an incident of reversal. It is not the writ of *certiorari* that is re-tried, but the original suit, as the *certiorari* has been ended.

Before chapter 153, Acts 1882, upon reversal under a writ of *certiorari* the court could simply reverse and remand the case to the lower court to enter a proper judgment, or could itself render a proper judgment. *Dryden* v. *Swinburn*, 15 W. Va. 234, p't 7; *Alderson* v. *Commissioners*, 32 W. Va. 454 (9 S. E. Rep. 863). Would any one say that a judgment of reversal then would not be final simply because the case was remanded for further proceedings? Now, the act of 1882 requires the Circuit Court to render judgment

without remanding. This does not change the nature of its judgment.

In 1889 the legislature added the provision that if the *certiorari* is from a justice's judgment, and the amount in controversy exceed fifteen dollars, if the judgment is set aside the case shall be retained and disposed of as if originally brought therein; that is, tried *de novo*. Before this statute upon reversal there could be no trial *de novo* in the Circuit Court; but, where further proceedings were necessary beyond what the judgment rendered on the record could effect, it must be remanded. Opinion in *Dryden* v. *Swinburn*, 15 W. Va. 267–274; same case in 20 W. Va. 105; *Alderson* v. *Commissioners*, 32 W. Va. 454 (9 S. E. Rep. 863). The statute has not changed the law as to retaining the cause in the Circuit Court, except as to *certiorari* from a justice's judgment. The disposal of the whole case spoken of in the statute only refers to the case as made by the record as brought upon *certiorari*, and does not authorize a trial *de novo* on other evidence, except in cases of judgment of justices. The statute as to *certiorari* from justices' judgments only fixes the place for the new trial of the original case, and by no means detracts from or affects the character of finality of the judgment of reversal. If there is any color for saying that a judgment of the Circuit Court reversing for cause shown in the record the judgment of the lower court is not final, but only interlocutory, it lies in the fact that the case is retained in the Circuit Court for new trial; but that fact will not do so. It is no less a final judgment than one of this court reversing a judgment and remanding for a new trial, and all concede that to be final after the close of the term. *Henry* v. *Davis*, 13 W. Va. 230.

Another reason for holding the judgment of reversal final is the fact, that the judgment of the justice was final, and that fact imparted finality to the judgment reversing it. Authority is decided sustaining the position that the reversal is a final judgment, and none the less so because the case is retained for further proceedings.

In *Cowling* v. *Nansemond Justices*, 6 Rand. (Va.) 349, it was held that though a judgment of the superior court reversing one of the County Court, and directing other plead-

ings, be interlocutory, yet the finality of the judgment of the County Court imparts its character to the judgment of the superior court so as to authorize an appeal to the court of appeals.

In *Janey* v. *Blake*, 8 Leigh, 88, it was held that where, on a *supersedeas* to a judgment of a County Court, the Circuit Court reverses the judgment, but omits to give such judgment as the County Court ought to have given, and retains the cause, the judgment of reversal by the Circuit Court must be regarded as final in its appellate character, and a *supersedeas* will lie from the court of appeals. "Where a Circuit Court upon appeal reverses the final judgment of the County Court, and retains the cause for a new trial, the judgment of the Circuit Court is such a final judgment as is the subject of a writ of error." *Brumbaugh* v. *Wissler*, 25 Gratt. 463.

In *Com.* v. *Lewis*, 25 Gratt. 938, there was a judgment against a defendant in the County Court for a misdemeanor and the case was reversed in the Circuit Court, and the cause retained for a new trial, and it was held there might be a writ of error to the Court of Appeals from the judgment of the Circuit Court.

The judgment being final, of course the defence of the ten days' statute of limitations could not be afterwards admitted. *Crim* v. *Davisson*, 6 W. Va. 465 ; *McKinney* v. *Kirk*, 9 W. Va. 26.

The suggestion, that the *certiorari* was a nullity because taken after ten days' from the judgment, and so the judgment of the court was void, and therefore the court could at any time vacate it as a void judgment, is untenable. Is a judgment in an action or upon a writ of error brought after it is barred void ? It was a writ of *certiorari*, and a judgment upon it, if erroneous, would not be void. A judgment not merely erroneous but void may be vacated at any time. *Lance* v. *McCoy*, 34 W. Va. 419; 1 Black, Judgm. § 307; *Hollins* v. *Patterson*, 6 Leigh, 457; 7 Rob. Pr. (New) 114. This power should be exercised with great caution.

We can not give any weight to the fact presented by counsel that, when the *certiorari* was decided, the decision

in *Long* v. *Railroad Co.*, 35 W. Va. 333 (13 S. E. Rep. 1010) holding that petition for a writ of *certiorari* from a justice's judgment must be presented within ten days, had not been made. In a legal point of view, we must say, that such had been the law all along and that case simply announced what was already the law and did not make the law. Therefore the judgment of the Circuit Court reversing the first judgment in that court is erroneous.

But, though it was beyond the power of the Circuit Court to set aside its first judgment, the appellee has cross assigned error in that judgment, and asks this Court to reverse it. The writ of error taken by the company being to the second judgment, and Morgan's cross assignment being to the first, a question occurs to me whether in the absence of a formal writ of error he could thus avail himself of error in the first judgment. Where the rights of parties are separate and distinct, the appellate court will not disturb a judgment for error that affects one not appealing; but, where their rights are identical, the reversal will be as to both. *Tate* v. *Liggat*, 2 Leigh, 84, 107; *Dickenson* v. *Davis*, *Id.* 401; *Purcell* v. *McCleary*, 10 Gratt. 246; *Walker* v. *Page*, 21 Gratt. 636, 652, 653; 2 Bart. Law Pr. 1353; 4 Minor, Inst. 970.

It must not be thought, however, that, because an appellee has not appealed, an error against him can not be corrected on a writ of error taken by another party; for the writ brings up the whole record, and any error to the appellee's prejudice may be corrected, though his interest be not identical with that of the appellant, but hostile, and though the writ of error may be only to a certain judgment, and the error to his prejudice be in either that or another. *Boulware* v. *Newton*, 18 Gratt. 708; *Day* v. *Murdoch*, 1 Munf. 460; *Defarges* v. *Lipscomb*, 2 Munf. 451; *Lomax* v. *Picot*, 2 Rand. (Va.) 247; Opinion in *Burton* v. *Brown*, 22 Gratt. 14; Bart. Law Pr. 1354. It ought to be the rule that error against the appellee is correctible, since an affirmance is binding and conclusive upon him not only as to the particular decree affirmed, but also as to prior ones. *Newman* v. *Mollohan*, 10 W. Va. 488; *Campbell* v. *Campbell*, 22 Gratt. 649; *Young* v. *Cabell*, 27 Gratt. 761; Bart. Ch. Pr. 1144;

*Worthington* v. *Staunton*, 16 W. Va. 234. And under section 13, c. 135, Code, requiring all parties except appellant to be summoned to appear to the appeal or writ of error, all are deemed appellees, and so bound.

Rule ten of this Court, which is only a reflex of the law without regard to it, provides that in any appeal or writ of error, if error is perceived against the defendant in error or appellee, the court will consider the whole record as being before it and reverse in whole or in part, in the same manner as it would, were the appellee or defendant in error to assign errors and bring the case before the court, unless waived. The rule advises, however, that counsel cross assign such error or point it out in the brief. 23 W. Va. 827.

Another question: The defendant, it is said, made no motion to quash or dismiss the *certiorari* because it was asked more than ten days after judgment; but he appeared and argued the case on the hearing, and the court heard the case on the record. He defended the writ. How do we know he did not rely on the point? The court heard the case on the record and proceedings. No ground of defence is specifically stated. By resisting the writ he moved a judgment of dismissal in the strongest terms. Would an express motion be logically any stronger? Does the fact, that it does not appear, that Morgan made any motion based on the ten days' limitation, bar him from relying upon it here? I think not. I have found no authority on the point; but analogies indicate that, if not allowed within ten days, as required by *Long* v. *Railroad Co.*, 35 W. Va. 33 (13 S. E. Rep. 1010) it is the right of the party to have the benefit of it without any formal motion to quash or dismiss. If he resists it, why should he not have the benefit of any lawful defence? Must he specify any particular one? We do not use formal pleas to the *certiorari* in our practice. A bill of review is a process to correct error in a chancery case, and it is well settled that, though it is considered a new suit and not a part of the cause (Bart. Ch. Pr. 331) yet it is not necessary to plead the statute limiting bills of review, but the bill must bring the case within the statute period or its savings. *Shepherd* v. *Larue*, 6 Munf. 529; 4 Minor, Inst. 1254; Bart. Ch. Pr. 127; Story,

Eq. Pl. § 410. And in appeals or writs of error to this Court, whilst a motion to dismiss as improvidently awarded or to quash in advance of hearing on the merits, is advisable as singling out a preliminary point of defence, and saving labor, yet, so far as I am advised or have seen from the reports, no motion is required to enable the party to have the benefit of the statute, but the court will *ex mero motu* dismiss a writ of error or appeal barred by the statute or where not barred, will refuse to consider any appealable decree older than the limit, and the petition must show right to appellate process from a decree or judgment within the limit, else it will not be allowed, or, if allowed, will be dismissed. *Lloyd* v.*Kyle*, 26 W. Va., 535; *Tiernan's Adm'r* v. *Minghini's Adm'r*, 28 W. Va. 314.

It is laid down in Elliott, App. Proc. § 111, that, where an appeal is too late, the question is jurisdictional in nature. If so, the court should notice it *ex mero motu*. If it is so on writ of error, why not on *certiorari?* In England according to appellate court practice it would have to be pleaded; but while I think the plea or motion ought to be required, as the party may waive the statute, yet such is not our practice, but the court pleads it for him.

In *Bee* v. *Seaman*, 36 W. Va. 381 (15 S. E. Rep. 173) where it was held that the writ of *certiorari* be quashed because applied for later than within ten days after judgment by the justice, just as in this case, the Circuit Court heard the *certiorari* on the record, and there was no motion to quash or dismiss, but the parties appeared and argued the cause. As Judge Holt said of that case I say of this. The date of judgment by the justice, and the application for the *certiorari*, appear on the face of the record, and why shall Morgan not have the benefit of the defence thence arising? It was therefore error to allow the writ and to render judgment reversing the justice's judgment.

A third case enforcing this limitation is *State* v. *Larue*, 37 W. Va. 828 (17 S. E. Rep. 397.)

The three cases cited have established the ten days' limitation to writs of *certiorari* beyond recall by any power save that of the legislature. I have heard a difference of opinion expressed as to the correctness of the rule. It seems

unreasonable that by express statute there should be a limit of ten days as to judgments by justices without a jury, and none where there is a jury. Why should this be so? It has lately occurred to me that the ruling of this Court applying the ten days' limit by analogy to that provided by said statute derives great confirmation from the fact that as Judge ROANE says in *Shepherd* v. *Larue,* 6 Munf. 530, the limitation to bills of review in England was not fixed by statute but by analogy to writs of error and by the fact, which I have observed, that the United States Supreme Court held that, though bills of review were not within the act of congress limiting appeals in equity, yet it applied their limitation to bills of review. *Thomas* v. *Harvie's Heirs* 10 Wheat. 146.

Counsel for the railroad company argues at length that appearance to the writ by Morgan, without motion to quash or dismiss because of the ten days' limitation, and an agreement after the reversal to continue the main action, constitute a waiver of the objection. The order shows that the case was, on appearance of parties, heard on the record and proceedings and argument of counsel. So Morgan made defence. No defence is specified. He may have have suggested this defence; and that was enough, and even that was not required. Is it possible that, by agreeing to a continuance, he waived the antecedent error consisting of the allowance of the *certiorari* and carrying it on to judgment? Must he let the main action go on without any defence? That defence then made would be to late. Such cases as *Harvey* v. *Skipwith,* 16 Gratt. 410, and *Mahany* v. *Kephart,* 15 W. Va. 609, and others cited, are not in point. They hold that, by appearance for any other purpose than to take advantage of defective or non service, the party waives defective execution or nonexecution of process, the only objects of service being to notify the party of the pendency of suit, which appearance shows he had. It surely does not cure a radical defect in the process or a vital objection going to the very existence of the writ of *certiorari.*

Counsel for the company presents another point with seeming confidence. As, under the decisions above cited, a *certiorari* must be applied for within ten days, or good

cause be shown by the party's oath or otherwise, within ninety days, why the application was not made within ten days, and as the order granting the *certiorari* recites the filing of the petition for it, and that it appeared that judgment had been rendered by the justice, and that the amount was over fifteen dollars, and that the judgment should be reviewed by *certiorari*, and as it was within ninety days, we are to presume that such cause for not sooner seeking the writ was, in some way not appearing, shown.

Now, first, it is doubtful whether we can say that the word "appearing" at all relates to the declaration that the judgment should be reviewed; and, second, it is straining language to evolve a presumption that evidence outside the record furnished an excuse for delay rather than that it is a mere expression of an opinion by the court, based on the record alone, that the case should be reviewed; and, third, it is a forced presumption that evidence by witnesses not noted in the record was produced to excuse the delay; and fourth, when the law requires the applicant for *certiorari* to show such excuse, we can not presume he did so when it does not appear so. Here the maxim applies, *"quod non apparet non est."* And further still, the syllabus in *Long* v. *Railroad Co.*, *supra*, in saying that the petitioner must "show by his own oath or otherwise good cause for not having taken the appeal within ten days," refers to the means of showing it, and by no proper construction tolerates the idea that he can bring in witnesses and examine them to show such cause, as we are asked to infer may have been done, without any note of it. The proceeding being in the first instance *ex parte*, the other party is not present to have such evidence incorporated, by exception or otherwise, into the record, and how could he contest the good cause either in the circuit or appellate court? It is the statute (section 174, c. 50, Code) that uses that language, and the case of *Hubbard* v. *Yocum*, 30 W. Va. 740 (5 S. E. Rep. 867) construes it, utterly excluding any idea that oral evidence can be so heard, and holding that the application for the *certiorari* must state the facts of excuse, and they must be shown to exist by the oath of the party or others to the petition, or by written affidavits or other written evidence filed with

it as exhibits. The evidence must be written. That was an appeal, but *Long* v. *Railroad Co.*, and other cases cited assimilate the *certiorari* to an appeal. How can we under this statute, so construed, open a way for any presumption that any cause for failure to ask the writ within ten days, not appearing in writing, may have been shown?

Our conclusion is to reverse both judgments in the Circuit Court, and dismiss the writ of *certiorari* as improvidently granted, leaving the justice's judgment, as the legal effect of such dismissal, standing in full force.