# CHARLESTON.

## HALE *v.* TOWN OF WESTON.

Submitted January 29, 1895—Decided March 30, 1895.

1. MUNICIPAL CORPORATIONS—DAMAGES—STREET.

Under section fifty three of chapter forty three of the Code, any person who sustains a direct injury to his person or property—for instance, having a limb broken or a horse disabled—by reason of a street in a town being out of repair, may recover damages for such injury by an appropriate action, in a court of competent jurisdiction, against said town.

2. MUNICIPAL CORPORATIONS—DAMAGES—STREETS.

One who suffers an injury only in his business from a street being out of repair can not recover damages therefor from a city or town under section fifty three of chapter forty three of the Code.

3. MUNICIPAL CORPORATIONS—DAMAGES—STREETS.

The proprietor of a brickyard who is engaged in the manufacture of brick in the vicinity of a city or town, and in the erection of houses in said town or city, who, in common with others, is injured in his business by reason of the municipal authorities thereof failing to keep a street in repair which constitutes the highway from said town passing said brickyard, can not maintain an action for damages against said city or town for losses sustained by him in his business.

4. JURISDICTION—SPLITTING ACTION.

A person who asserts a claim to a specific amount of damages for an alleged injury sustained in his business will not be allowed to split up his claim in order to reduce it to the jurisdiction of a justice, and to bring consecutive suits before a justice for such claim.

A. EDMISTON and W. W. BRANNON for plaintiff in error:

*In an action for damages the plaintiff can not manufacture a jurisdiction before a justice by splitting up his demand.*— Const. of W. Va. Art. VIII, s. 28; Code of W. Va. c. 50, s. 8; 33 W. Va. 88; Sedg. on Dam. (8 Ed.) vol. 1, § 84; 33 W. Va. 289; 2 Va. Cas. 42; 77 Va. 225; 4 Miner's Inst., part 1, 266; 15 Am. Dec. 632; Hawes on Jur. of Cts. § 10.

*In West Virginia cities and towns are not liable in civil actions for damages resulting to individuals by failure to keep roads, streets and alleys in repair.*—Code of W. Va. c. 43, s. 53; 6 W. Va. 312; 16 W. Va. 307; 23 W. Va. 14; 31 W. Va. 384; 30 W. Va. 657; 34 W. Va. 299; 2 Sher. & Redf. on Neg. (4 Ed.) § 371; Sher. & Redf. on Neg. (Ed. 1869) 136; Sedg. on Meas. of Dam. (Ed. 1847) 34; 46 Tex. 525; 17 Ill. 143.

W. B. McGARY for defendant in error:

ENGLISH, JUDGE:

This was a suit brought by P. M. Hale on the 3d day of June, 1890, before R. L. Mason, a justice for the county of Lewis, against the town of Weston, in which the plaintiff claimed and recovered three hundred dollars damages. The case was removed to the Circuit Court on *certiorari*, and was again tried in that Court, resulting in a verdict for the plaintiff, and judgment for three hundred dollars. During the trial of said action in the Circuit Court the defendant excepted to various rulings and instructions given by the court, and after the evidence for the plaintiff was all in, the defendant, by its counsel, moved the court to strike out the plaintiff's evidence, and exclude the same from the jury, which motion the court overruled, and permitted the said evidence to remain before the jury, and the defendant excepted.

The action appears to have been predicated upon the following state of facts: The plaintiff was the owner and operator of a brickyard in the vicinity of the town of Weston in the fall and winter of 1889-90, and in order to reach said brickyard from said town with fuel to be used by him in burning his brick, and to carry his brick, when ready for use, to such places as he needed them in the town, he was com-

pelled to pass over a certain street of said town, which was in bad condition, and which, although the town authorities had attempted to repair it by scraping dirt into the holes, was almost impassable, on account of the wet season which followed, and by reason of the condition of this street he was unable to haul fuel to his kiln, which was ready to burn; that the brick were injured by drawing dampness, and he was damaged thereby to the amount of one thousand dollars.

The plaintiff was asked the question whether he divided up his suits and sued for three hundred dollars at different times, and replied: "Yes, sir; I did, so I could get them tried. After suing first time, and obtaining judgment I waited, thinking the town authorities would fix up the street, and, after their failure to do so, sued again, and in like manner, after waiting a second time after judgment, sued the third time." The defendant moved to strike out the plaintiff's evidence, to set aside the verdict, and award it a new trial, because the same was not founded on sufficient evidence, because it was contrary to the law and the evidence, and because the same was contrary to the court's instructions, which motion having been overruled, the defendant excepted, and set out all the evidence offered before the jury in a bill of exceptions, and applied for and obtained this writ of error.

The first error assigned and relied upon is the refusal of the court to strike out the plaintiff's evidence. Under this assignment of error the question is presented whether or not, everything being proven in the case which the evidence tends to prove, the plaintiff is entitled to recover; in other words, does the fact that the street or road complained of during the wet season and winter of the years 1889-90, became impassable for teams, render the town of Weston, through a portion of which said highway passes liable in damages to the plaintiff, who was engaged in the manufacture and sale of brick in the locality shown by the evidence?

Under the heading "Public Wrongs," Sedg. Dam. (5th Ed.) p. 32, says: "To this general principle, that, where loss and legal injury unite, relief will be given by suit, the law recog-

nizes but one exception—that where the wrong is on so great a scale that the whole community, or a large portion of them, suffer from it. 'Here,' says Blackstone, 'I must premise that the law gives no private remedy for anything but a private wrong.' And so the law is laid down by Lord Coke in regard to nuisances on highway: 'A man shall not have an action on the case for a nuisance done in the highway, for it is a common nuisance; and then it is not reasonable that a particular person should have the action, for, by the same reason that one person might have an action for it, by the same reason every one might have an action, and then he would be punished a hundred times for one and the same cause.' 'In such a case the remedy is by indictment.' So, also, in the case of *Quincy Canal* v. *Newcomb*, 7 Metc. (Mass.) 276, it was said that if a party had suffered damage from the filling up of a canal, and want of cleansing, by means of which he was unable to enter it, it would have been a damage suffered in common with all other members of the community, and therefore redress must be sought by a public prosecution. Where one suffers in common with all the public, although from his proximity to the obstructed way, or otherwise, from his more frequent occasion to use it, he may suffer in a greater degree than others, still he can not have an action, because it would cause such multiplicity of suits as to be itself an intolerable evil. But where he sustains a special damage, differing in kind from that which is common to others, as where he falls into a ditch unlawfully made in a highway, and hurts his horse or sustains a personal damage, then he may bring his action." 2 Shear. & R. Neg. § 371, states the law upon this question, as follows: "He, and he only, can maintain an action for a defect in a highway who has sustained some damage peculiar to himself, his trade or calling. A private action will not lie for an injury caused by the non-repair of a highway, if all other persons passing suffer in the same kind, even though in far less degree. * * * Thus the mere fact that one is delayed by an obstruction, and is obliged in common with every one else who attempts to use the highway, either to pursue his journey by a less direct road, or else to remove the obstruction, will not entitle-

him to maintain an action for damages. And although an obstruction in a highway may make it difficult, or indeed impossible for a merchant to deliver goods at his store, or for a farmer to gather his crops, or for a landlord to rent his houses, yet if the whole neighborhood suffer damages from the same cause, similar in kind, even if less in degree, no damages are recoverable. Upon this principle, no one can recover damages for being deprived, with the rest of the community, of the use of a highway by its total obstruction, as, for example, by a great fall of snow." And in note 1 it is said: "An action can not be maintained against a town for damages alleged to have been caused to the plaintiff by the obstruction of a road by snow, by reason whereof he was prevented from traveling on the road with his cattle and teams and on foot, and from transporting his logs and timber to a saw-mill, and from otherwise working on his wood lot and about his logs and wood, and a declaration setting forth such a cause of action is bad on demurrer;" citing *Holman* v. *Townsend*, 13 Metc. (Mass.) 297, *etc.*

It is difficult to distinguish between the consequences and liability resulting from a fall of snow on a highway and the fall of rain upon a street or roadway which has been recently repaired, and the holes filled with loose dirt, as the result would be the same in both instances. A case very similar in its circumstances to the one under consideration is that of *Gold* v. *City of Philadelphia*, reported in 8 Atl. 386, in which it is held by the Supreme Court of Pennsylvania that "a municipal corporation charged with the duty of keeping highways in repair is not liable to the owner or occupier of property fronting thereon for a consequential loss to his business resulting from the neglect of such duty." The facts in this case as disclosed by the report of the referee, appear to have been that the plaintiff was the lessee and proprietor of an inn situated in the suburbs of the city of Philadelphia, at which farmers and drovers were in the habit of stopping, with their cattle, and sheds had been erected for their accommodation, and the patronage of the house was such that it was a source of considerable profit. The inn fronted on the road leading into the city, which road was under the

supervision of the city authorities.  The road had 'been neg-
lected for several years, and, as a natural result, was in bad
repair; and in the fall of 1880, the city graded Gowen avenue,
at Mt. Airy, some distance below the inn of the plaintiff, and,
from the cuttings made necessary by that grading, obtained
a quantity of red or yellow earth or loam, which was spread
upon portions of the road in question, with the intention of
grading it.   During the winter, after this red earth was
put upon the road, the condition of it was very bad; the ruts
and holes, which had been allowed to grow deeper in the old
roadbed, were covered and hidden from sight by the soft
earth spread over them; and when the rains came, and this
soft earth was converted into mud, these old holes served as
pitfalls for travelers, who, by reason of the covering of the
mud, were unable to see them, and the custom at the plain-
tiff's inn was greatly decreased by the condition of this road.
One of the defenses relied on by the city was that the obli-
gation imposed upon the city to keep the road in repair was
a public duty, a neglect to perform which was punishable by
indictment, and that no one was entitled to a private action
for negligence against the city, unless he could show some
injury peculiar to himself, and different in kind from that
which was suffered by the general public.   The learned
judge, in concluding his opinion in this case, says:   "When
a duty is imposed upon a municipal corporation for the ben-
efit of the public, no benefit or consideration is received by
such municipality, as in the case of a trading corporation;
hence no implication arises of liability to the individual citi-
zen for any injury, which he has suffered in common with
other citizens, resulting from a neglect of such duty.   To
sustain a contrary doctrine would be disastrous to municip-
alities, and consequently to the general public.   If we once
throw open the door to a recovery in such cases, how are we
to measure the extent to which a public highway may be
out of repair, in order to entitle owners of property abutting
thereon to recover damages?   Such questions would have
to be referred to a jury, whose standard of duty would be as
shifting as their verdicts would be uncertain, and in many
instances oppressive."   Mr. Bigelow, in his note to *Rose* v.

*Miles* (Lead. Cas. Torts 471) states the general principle thus: "If, then, the right invaded or impaired is a common or public one, which every subject of the state may exercise and enjoy, such as the use of a highway or canal, or a public landing place or a common watering place upon a stream, in all such cases a mere deprivation or obstruction of the use, which excludes or hinders all persons alike from the enjoyment of the common right, and which does not cause any special or peculiar damage to any one, furnishes no ground of action in favor of an individual." See, also, *Willard* v. *Cambridge*, 3 Allen 574, the syllabus of which case reads as follows: "No action lies to recover damages for the obstruction of a highway, against a city which is bound to keep it in repair, by an individual whose place of business thereby becomes more difficult to reach, his business injured, the delivery of articles which he has sold and the gathering of his crops more expensive, his houses less desirable for tenants, and his rents diminished in value, if other persons suffer damages from the same cause, similar in kind, though less in degree." Also *Hill* v. *City of Boston*, 122 Mass. 344, in which Chief Justice Gray, after carefully reviewing the English decisions on this subject, concludes that "the result of the English authorities is that when a duty is imposed upon a municipal corporation for the benefit of the public, without any consideration or emolument being received by the corporation it is only where the duty is a new one, or is such as is ordinarily performed by trading corporations, that an intention to give a private action for a neglect of its performance is to be presumed."

The failure to keep a road or street in repair is not an offense against a single individual, but against the whole community. It is a public offense, and is therefore punishable by indictment. Many individuals might complain with propriety of a public offense, but the law does not delegate the punishment of such an offense to each individual that could reasonably complain, nor does it allow him to recover private satisfaction, in the shape of damages, unless he has received a personal injury, or some direct damage to his property. To allow every man who is injured in his calling or business

by reason of the bad condition of the roads and streets within the limits of a municipal corporation to sustain an action against the town or city, and receive compensation in damages, would lead to disastrous results. It would be difficult to say what degree of perfection in paving and draining its streets would give such a corporation immunity. The farmer, the furnisher of fuel, stone or brick, and in fact every one having occasion to pass over the street, could furnish a grievance; and the degree of perfection in the highway which would be acceptable to one might be entirely unsatisfactory to another, so that if the door is thrown open, and every person who has a real or supposed cause of complaint on account of the condition of the streets can recover damages against the city or town, it would lead to a multiplicity of suits which would be disastrous. This question was discussed at some length by Judge Green in the case of *Watkins* v. *County Court*, 30 W. Va. 657 (5 S. E. Rep. 654); and after commenting on our statute (section 53 of chapter 43 of the Code) which provides that any person who sustains an injury to his person or property by reason of a public road or bridge in a county, or by reason of a public road, bridge, street, sidewalk or alley in an incorporated city, village, or town, being out of repair, may recover all damages sustained by him by reason of such injury, *etc.*, he says: "This being the extent of the liability in damages to any person, imposed by statute, for neglect of duty in reference to the public roads, either by the county court, or by a surveyor of roads appointed by the county court, can the county court be subject by suit to the payment of damages in any other case than that specified in the statute?" *etc.* And it will be perceived that streets, sidewalks or alleys in an incorporated city or town being out of repair stand in the same category. He says also on page 660, 30 W. Va., and page 654, 5 S. E. Rep.: "But it would seem to follow from the fact that as counties, or county courts, or other political corporations who manage their affairs, are created, not for any private advantage, but almost exclusively with a view to the policy of the state, and charged with the superintendence and administration of the local affairs of a county, as a mode of carrying out such public

policy, they would not be liable in damages for any neglect of a public duty to any individual who had directly suffered an injury from such neglect, unless the statute has expressly, or by necessary implication, made them responsible as corporations. At common law, such political corporations or such county would not be liable in any civil suit for damages resulting from a neglect of duty. And, in accordance with these views, it has been almost universally held, both in England and in this country, that neither a county nor a political corporation, managing its local affairs, causing public roads and bridges to be made and kept in repair, public school houses to be built and kept in repair, and other public duties to be performed, are ever liable, as corporations, to be sued by any individual for damages sustained by their neglect to perform such duties, or by the neglect of public officers or agents appointed by them to perform such duties, except when they are made responsible as corporations, either expressly or by necessary implication, for damages resulting from neglect of duty."

1 Shear. & R. Neg. § 253, in speaking of municipal corporations as state agencies, says: "The governmental powers of the state are further exercised by a great number of municipal and *quasi* municipal organizations, such as cities, towns, counties and boards, to which, for purposes of government, and for the benefit and service of the public, the state delegates portions of its sovereignty, to be exercised within particular portions of its territory, or for certain well-defined public purposes. To the extent that such local or special organizations possess and exercise governmental powers, they are, as it were, departments of state. As such, in the absence of any statute to the contrary, they have the privilege and immunity of the state. They partake of the state's prerogative of sovereignty, in that they are exempt from private prosecution for the consequences of their exercising, or neglecting to exercise the governmental powers they possss. To the extent that they exercise such powers, their duties are regarded as due to the public, not to individuals. Their officers are not agents of the corporation, but of 'the greater public,' the state. No relation of agency existing between

the corporation and its officers with respect to the discharge of these governmental duties, the corporation is not responsible for the acts of omission of its officers therein. This is nothing more than an application and proper extension of the rule that the state is not liable for the misfeasance of its officers."

And again, under the heading, "The Damage Must be Special to Plaintiff," the same authors say in section 24: "It is not only essential to the maintenance of an action for negligence that some damage should have been suffered, but that damage must have been suffered by the plaintiff, or he has no cause of action. If, by reason of a breach of duty owed to the public, he has suffered no especial damage—that is, no damage other than such as every other member of the community has suffered in equal measure—a private citizen has no right to sue." See, also, note 2: "The fact that a citizen's route to his market is interfered with by obstructions placed in the highway is not such a special injury as will entitle him to maintain an action;" citing *Brant* v. *Plumer*, 64 Iowa 33 (19 N. W. Rep. 842) and *Sohn* v. *Cambern*, 106 Ind. 302 (6 N. E. Rep. 813).

My interpretation of our statute (section 53 of chapter 43 of the Code) is that any person who sustains a direct injury to his person or his property, as, for instance, having a limb broken or a horse disabled, by reason of the street or road being out of repair, may recover damages for such injury by an appropriate action in a court of competent jurisdiction; but it was not intended by said statute that a person who, in common with the community, suffers in his business relations by reason of the bad condition of the streets, should recover damages from the city or town for such injury. Therefore, my conclusion is that the court erred in refusing to strike out the plaintiff's evidence.

Another question is raised by counsel for the plaintiff in error, and that is whether the plaintiff could split up or separate his demand so as to bring it within the jurisdiction of a justice. The plaintiff, in his testimony, stated that he divided up his suits, and sued for three hundred dollars at different times. He says: "After suing first time, and

obtaining judgment, I waited, thinking the town authorities would fix up the street, and, after their failure to do so, sued again, and in like manner, after waiting a second time, after judgment, sued the third time." Our statute (Code, c. 50, s. 8) provides that "a justice shall have jurisdiction of all civil actions for the recovery of money or the possession of property, including actions in which damages are claimed as compensation for an injury or wrong, provided the amount of money or damages or the value of the property claimed does not exceed three hundred dollars, exclusive of interest and costs," etc. Prof. Minor, in his Institutes (volume 4, part 1, p. 206) says: "Where an entire claim exceeds twenty dollars and has been divided into several parts, each not exceeding twenty dollars, and separate securities are taken therefor, and all are due, it seems the better opinion, in this case, that the courts of record can not thus be deprived of their jurisdiction, nor the defendant to his right of trial by jury, and that a writ of prohibition will be awarded by the circuit court in order to prevent the usurpation;" citing *Hutson* v. *Lowry*, 2 Va. Cas. 45. The question raised in this case is not whether the justice had jurisdiction in this particular case, but whether the plaintiff had a right to divide up his claim so as to bring it within the jurisdiction, and then bring successive suits. In the case of *Stewart* v. *Railroad Co.*, 33 W. Va. 88 (10 S. E. Rep. 26) this Court held that, "in determining the question of jurisdiction in the action before a justice for a wrong, the amount claimed in the summons, not the damages shown by the testimony, must control." In the case of *Aulick* v. *Adams*, 12 B. Mon. 104, it was held that "in actions of tort the damages claimed usually determined the jurisdiction, as to amount." In the case under consideration, however, three successive suits appear to have been brought for the same cause of action, for three hundred dollars each; and the plaintiff states that his object was to avoid the jurisdiction of the Circuit Court, and bring his claims within the jurisdiction of a justice. He states that his claim was one thousand dollars. If his claim was *ex contractu*, there could be no question that it would not be allowed; and where the

claim he asserts is definite, as it was in this instance, I should think the same rule should be applied as in the case of contract. The right to divide his claim into three parts would imply the right to divide it into ten, and there would be no end to litigation and costs. In the case of *Bodley* v. *Archibald*, 33 W. Va. 229 (10 S. E. Rep. 392) this Court held that prohibition would lie to prohibit justices and other petty tribunals, which are limited by law to the decision of controversies where the amount falls within a specified sum, from exercising a jurisdiction wholly beyond their authority, even after judgment, but before the judgment has been fully carried into effect, "and in such cases the want of jurisdiction may be made to appear by matters *dehors* the record of the proceedings before such inferior tribunals." If the plaintiff in this case had sued for his whole claim, one thousand dollars, before the justice, we could not hesitate as to want of jurisdiction. Can he be allowed to do the same thing— effect the same result—by three or four suits? We say not.

The judgment must be reversed, and the cause remanded with costs.