# CHARLESTON.

## Wells *v.* Michigan Mut. Life Ins. Co.

Submitted June 14, 1895—Decided Nov. 16, 1895.

1.  Contract to Loan Money.
    While an action for damages for refusal to execute a consummated contract to loan money lies as in other cases, it must be a complete and consummated contract.

2. AUTHORITY OF AGENT—PRESUMPTION.

> One dealing with an agent is presumed to have read his power of attorney. He must look to the agent's authority, as an act not within it is not binding on the principal

3. JURISDICTION—REDUCTION OF CLAIM—UNLIQUIDATED DAMAGES.

> In cases of unliquidated damages, if not in other cases, a party may reduce his claim so as to bring it within the jurisdiction of a justice; but can not divide a claim, and bring two or more suits.

C. T. CALDWELL and G. W. NEAL for plaintiff in error, cited Code, c. 110; Code, c. 50, s. 174; 39 W. Va. 17; 37 W. Va. 828; 35 W. Va. 333-336; 24 W. Va. 181; 27 W. Va. 543; 18 W. Va. 309; 40 W. Va. 234.

LAIRD & TURNER for defendant in error, cited 33 W. Va. 229; 15 W. Va. 867; 24 W. Va. 520; 35 W. Va. 335; 2 Spelling, Ex. Relief, §§ 1901-6; 119 U. S. 199; 13 Am. & Eng. Enc. Law, 688-89, notes; 28 W. Va. 388, 396; 11 Ired. L. 47; 27 Gratt. 264; 82 Va. 734; 39 W. Va. 17, 19, 23; Code, c. 135, ss. 1 (par. 1 and 9) 3; 28 W. Va. 314, 318; 27 W. Va. 510, 543, 778, 781, 782; 26 W. Va., 534.

BRANNON, JUDGE:

Wells brought an action before a justice of Wood county, and, having recovered judgment upon a verdict against the defendant, the Michigan Mutual Life Insurance Company, that company had recourse to a writ of *certiorari*, and upon it the judgment of the justice was reversed, the verdict of the jury set aside, and, the case being retained in the Circuit Court for retrial, such retrial was had before the court in lieu of a jury, and the court found and rendered judgment for the defendant, and the plaintiff sued out this writ of error.

It is assigned as error that the circuit court erred in granting the *certiorari*, and in setting aside the verdict and reversing the judgment of the justice, because, when the writ was applied for, more than ninety days had passed since the judgment of the justice, and the writ was barred, under *State* v. *Larue*, 37 W. Va. 829 (17 S. E. 397). We decided in *Morgan* v. *Railroad Co.* 39 W. Va. 17 (19 S. E. 588) that a judgment of a circuit court upon a writ of *certiorari*, reversing a judgment of a justice and granting a

new trial, was final. Two years, is therefore, the limit for a writ of error to it, and as more than two years elapsed from that judgment before this writ of error was granted, as to that judgment it is barred. Indeed, as the writ of error is in terms to the last judgment, and the other is final and barred, we can not consider it. But it is said that the necessity for taking out the writ within the prescribed time is jurisdictional, and therefore the judgment is void, and may be disregarded, and set aside any time. We have heretofore otherwise decided. A judgment in an action or upon a writ of error barred by time is not void. This limit to *certiorari* is not statutory. The court has jurisdiction of writs of *certiorari* generally, and a judgment in an instance where the writ was barred is a judgment of a court of jurisdiction of cases *ejusdem generis*, and is not a mere nullity. That judgment has a certain effect. It vacated the judgment and verdict and reopened the action for trial *de novo*. The writ of *certiorari* ended in that judgment, though that judgment revived the same action brought before the justice, just as a judgment of reversal and new trial in this Court ends the writ of error, but the effect of that judgment is to reopen or revive the original action for new trial.

Next, is there error in the second judgment? This depends on the evidence. The action was for damages for failure to make a loan to the plaintiff. The plaintiff applied for a life policy, and it was issued, contingent on whether a loan should be made or not; that is, Wells was not to pay the premium, or be bound, unless the company should decide to make a loan. Wells himself says so. This shows that no loan had been yet consummated, but was dependent on the company's will. No formal written application, as required by the rules of the company, for a loan was made by Wells. He did ask an agent for a loan of two thousand, five hundred dollars, and they talked about it. It was to be secured by a mortgage on a farm. The agent did go to inspect the farm as to its adequacy as a security, and he thought it adequate. But an abstract of title was to be furnished by Wells, and title was to be good; such as the company and its attorney would, according to its usage, approve. No abstract was, it seems, furnished;

but if it was, it was held insufficient. Other abstracts for other loans in Wood county were furnished by the same attorney in Wood county, and the Detroit attorney of the company declined to accept them, and the finance committee of the company declined to make any loans in West Virginia, because the attorney held the abstracts were not satisfactory, as they did not give derivation of title, certainty of description of the land, *etc.* The company's agent promptly informed Wells of the refusal of his proposition for a loan, returned him his notes for premiums on his life policy, and Wells returned the policy. The agent denies that he ever agreed to make a loan, but said, as far as the value of the land was concerned, he would recommend a loan, if the title was made acceptable to the company. It is undeniable on the evidence on both sides that by the understanding of the parties, abstract of title, showing clear title acceptable to the company, with privilege in it to make or refuse the loan, was to be furnished. The plaintiff's own evidence clearly shows this.

A party of whom a loan is asked, in the nature of the case, has a right to refuse a loan, for his own reasons, just as much as one has to buy or refuse to buy, or sell or refuse to sell, a given thing, for his own reasons. A contract, whether a loan or sale, must be made and completed by a proposal on one side accepted on the other. Never was a contract to make a loan consummated in this case. Imperfect negotiation for a loan there was, but it was rejected, and the rejection communicated to the other party. An old lien on the land was discovered, and the agent told Wells that it would have to be removed, and, if removed, he would recommend the loan; and it was removed. Wells plants himself on the theory that this lien was all that was in the way, and that he was promised by the agent that if it should be removed, the loan would be made, and he, the agent, would bring him the money. The agent denies this; but say that he did as represented, however unreasonable the proposition may be, as it was all dependent on the company's action, the plaintiff himself says he knew the agent could but recommend a loan. He had no shadow of power to bind the company to make a loan. His written

power of attorney employed him in another scope of authority, and conferred no such power. All loans must be by action of the finance committee of the company.

One dealing with an agent must act as if the power of attorney were open before him to be read. He must ascertain the agent's authority. He is presumed to know it. If the agent exceeds his authority, the principal is not bound. *Curry* v. *Hall*, 15 W. Va. 867.

The plaintiff's claim is for fees paid an attorney in looking up title, and in a suit to clear it of the lien, and costs in it, and general damage unspecified; and he says he was compelled to sell his farm to pay debts in consequence of not getting a loan, though he received a fair price for it. These expenses he incurred on his own motion, in hope of a loan, as steps preliminary and necessary in the negotiation.

It is not necessary to say how far the very unusual action for damages for refusal to comply with a consummated contract to make a loan may be sustainable, or what the measure of recovery (Sedg. Dam. § 622; *Turpie* v. *Lowe*, 114 Ind. 37 (15 N. E. 834); *Stanley* v. *Nye*, 51 Mich. 232 (16 N. W. 387) but I can safely say that where there is no completed contract to loan, no action can be maintained. Such is the case here, clearly, under the evidence.

There is another reason suggested against the maintenance of the action, and that is that the plaintiff's claim was reduced purposely to get jurisdiction before a justice. The plaintiff admits that in making up the claim he desired to avoid the circuit court. But, the claim sounding in unliquidated damages, I can hardly see how it can be said that it was reduced from any particular sum. In case of unliquidated damages, such as this, I see no reason why a plaintiff may not release from what really, under the evidence, he might recover, to bring it within the jurisdiction of a justice, even if different in cases of debt. In cases of demand based on notes or accounts it has been held in some states that a credit or reduction just to get jurisdiction in an inferior court can not be made. *Peter* v. *Schlosser*, 81 Pa. St. 439; *Bent* v. *Graves* (S. C.) 15 Am. Dec. 632; *Cox* v. *Stanton*, 58 Ga. 406. But otherwise in New York, Missouri,

Massachusetts, Indiana, and Colorado. See cases in note to *Grayson* v. *Williams*, 12 Am. Dec. 568. See Wells, Jur. § 102. I do not see why the defendant can complain when he is sued for less than he is liable for. It is different where one demand is split into several parts, and the defendant vexed with several suits, as in *Hale* v. *Town of Weston*, 40 W. Va. 313 (21 S. E. 742) and *Bodley* v. *Archibald*, 33 W. Va. 229 (10 S. E. 392).

Judgment affirmed.