WILEY A. QUEEN *et al. v.* KENOVA HARDWOOD FLOORING CO.

(No. 7516)

Submitted February 13, 1934. Decided February 20, 1934. (Rehearing denied April 9, 1934.)

624

*W. T. Lovins,* for plaintiff in error.

*M. J. Ferguson* and *J. Floyd Harrison,* for defendants in error.

HATCHER, JUDGE:

This is an action brought before a justice in February, 1932, for the recovery of money due on a sale of lumber. The defendant did not appear at the trial and the justice rendered a judgment in favor of plaintiffs for $300.00. The defendant appealed to the circuit court where the plaintiffs obtained the same judgment. The defendant secured a writ of error to this court.

There is no real dispute as to any material fact. The plaintiffs had about 87,000 feet of graded "6-4 number 3 common oak" lumber on Trough Fork in Wayne County. On May 16, 1930, they hauled a truck load of the lumber to Kenova and sold it to the defendant. The latter then entered into a contract with the plaintiffs to take 80,000 feet of their lumber at $20.00 per thousand feet, the lumber to be of the same grade as that brought on the truck and to be delivered on railroad cars f.o.b. Kenova. The defendant was to inspect and load the lumber on the cars at Ranger, a railroad station some eight or ten miles from Trough Fork. A car containing 21,275 feet was delivered in June, 1930, and another containing 22,769 feet was delivered in July, 1930, both of which shipments were accepted and paid for. The defendant rejected only one small board at Ranger out of the lumber tendered for the two car loads. In August, 1930, the defendant directed plaintiffs to haul to Ranger the lumber for a third load. This was done promptly. On September 25th a representative of the defendant wrote plaintiffs as follows: "We can take in one car of the 6-4, about 15000' right now, but if you will wait a little bit later we think we can take in all of this stock at once, which would be more profitable to me as I have to come and load. * * * we would prefer you would wait and let us load all the lumber together." The plaintiffs hauled 47,000 feet of lumber to Ranger in September, 1930. They did wait "a little bit", and then often importuned the defendant to come to Ranger but it came not. On April 6, 1931, the defendant wrote plaintiffs that it would try to have a certain customer take the

lumber "just as soon as they can." The result of that effort was merely an offer of defendant to pay plaintiffs $15.00 per thousand feet f.o.b. Kenova for the lumber at Ranger. The offer was not accepted. Finally, plaintiffs sold the lumber at Ranger on January 9, 1932, at public auction after advertisement and notice to defendant of the sale. The lumber brought $8.00 per thousand feet.

The defendant tendered a plea to the circuit court which was termed a "special plea to the jurisdiction of the court" and alleged as follows: (1) that prior to the institution of this action the plaintiffs asserted a claim of $940.00 against the defendant; (2) that simultaneously with this action the plaintiffs instituted another action against defendant before the justice for $300.00 for the recovery of damages for a wrong; and (3) that if plaintiffs have any cause of action whatsoever against defendant, they have only one demand, and because the plaintiffs split their cause of action the justice had no jurisdiction in either action. A demurrer was sustained to the plea.

Defendant cites and relies on *Hale* v. *Weston,* 40 W. Va. 313, 21 S. E. 742. The record in that case shows that Hale, with an unliquidated claim of a thousand dollars against the town of Weston, brought three successive actions at intervals of about three months on that claim, for three hundred dollars each, before a justice and obtained three separate judgments. The first and second actions were plead in bar to the third action. That action reached this court by appeal and the court very properly held that the justice was without jurisdiction therein. The first judgment procured by Hale was *res judicata* as to the subsequent judgments. But there is no allegation in the instant plea that the tort action therein referred to was prosecuted to a final judgment. So the *Hale* case is not relevant here.

It would seem hardly necessary to say that the assertion of a claim for a greater sum than that sued upon does not bar the suit. Neither did the mere institution of the two actions, if upon the identical demand, affect the jurisdiction of the justice in either action. At most, the pendency of one action would be "mere matter of abatement" of the other. *State* v. *Bland,* 89 W. Va. 600, 603, 109 S. E. 716. The plea not only

fails as a plea in bar, but also as a plea in abatement. The latter "are not favored by the courts and the greatest strictness is applied to them, and they will not be aided in construction by any intendments." 22 Ency. Pl. and Pr. 23. Accord: 1 Standard Ency. Procedure, 46; 1 C. J. 28; *State* v. *McIntosh*, 82 W. Va. 483, 96 S. E. 79. The plea herein does not allege that the action for damages for a wrong *is still pending*. That is a necessary averment. 22 Ency. Pl. and Pr. 754-5; 1 Standard Ency. Procedure 1037; 49 C. J. 238; *Archer* v. *Ward*, 9 Gratt. 622; *Risher* v. *Wheeling Co.*, 57 W. Va. 149, 49 S. E. 1016; *Katzenstein* v. *Prager*, 67 W. Va. 343, 67 S. E. 792. Therefore, the demurrer to the plea was properly sustained.

The defendant would excuse its failure to take the lumber at Ranger on the ground that the lumber was below the prescribed quality. But defendant's witnesses did not see the lumber until January, 1932, at which time it had admittedly deteriorated from exposure to the elements. Plaintiffs testify that the lumber was stacked in the customary way practiced by lumbermen when the lumber is expected to remain in the stack only a short time, and that when stacked the lumber was as good as, or better than the two car loads accepted by the defendant in June and July, 1930. The defendant's real reasons for not taking the lumber appear in the testimony of its own purchasing agent, who said: "I had a market for the lumber and my customer would not take the lumber. I was waiting until I could move the lumber and pay for it. * * * I didn't have any immediate place to put the lumber, and my yard was crowded at Kenova. I could not take care of it in my yard at Kenova."

Upon receiving notice of the sale to be made on January 9, 1932, the defendant offered to take 38,000 feet of the lumber at Ranger at $21.00 per thousand feet if delivered at Kenova and if quality was equal to that hauled to Kenova on the truck in 1930. This offer was rejected by plaintiffs. Defendant contends that such rejection precludes plaintiffs from recovering. In 1932 the lumber at Ranger was not of the prescribed quality and defendant knew it. The deterioration of the lumber was due to the default of the defendant. Therefore the contention is not well taken.

The defendant complains of the ruling of the trial court on the instructions. The court instructed the jury that the delivery of the lumber at Ranger entitled the plaintiffs to recover, and refused instructions requested by defendant which would have made delivery at Kenova a prerequisite to recovery. Under the agreement between the parties, the defendant was to inspect and load the lumber at Ranger. The defendant did not perform those duties. It cannot now defend upon its own derelictions. The ruling of the court was proper.

The defendant further contends that the evidence does not support the *quantum* of the judgment. After defendant directed plaintiffs to haul the lumber to Ranger, prompt acceptance and payment was incumbent on defendant. Upon its failure to do so in the fall of 1930, plaintiffs were entitled to recover the contract price ($20.00 per thousand feet) on the balance of the lumber contracted for (35,956 feet) less the freight to Kenova ($4.32 per thousand feet) which would make $563.79 then due the plaintiffs. The interest thereon for one year ($33.82) had accumulated when the lumber was sold at auction in January, 1932, making $597.61 (principal and interest) owing plaintiffs at the time of the sale. From that amount deduct the proceeds of the auction (35,956 feet $\times$ $8.00 = $287.64) and the remainder is $309.97, due plaintiffs at the commencement of this action.

The record does not specify which party to the contract should pay for the manual loading of the lumber on the cars at Ranger or show the cost of such loading. But, for the sake of argument, say that this expense was upon the plaintiffs by reason of their agreement to deliver f.o.b. cars Kenova. Because of the failure of defendant to load the balance of the contracted lumber at Ranger the railroad company required plaintiffs in September, 1931, to move the lumber off the right of way. It cost plaintiffs ''around'' $2.00 per thousand feet to do so. That cost was occasioned solely by the default of defendant, and would assuredly be sufficient to offset the expense of loading the lumber on cars even if that expense fell on plaintiffs.

The judgment of the circuit court is accordingly affirmed.

*Affirmed.*