# CHARLESTON.

KATZENSTEIN v. PRAGER *et al.*

*(Two Appeals).*

Decided March 29, 1910.

1. EQUITY—*Decree Pro Confesso—Necessity for Plea or Answer to Prevent Decree.*

    When a bill specifically assails rights claimed by a defendant who is summoned or enters an appearance in the suit recognizing the jurisdiction of the court, he must make direct defense by plea or answer if he would prevent decree against him on the bill taken for confessed.

2. SAME.

    In a suit for a settlement and distribution of the assets of an insolvent firm, though the bill makes no allegations affecting the claim of a creditor who is made defendant and appears thereto, if he does not in some way present his claim for adjudication, or does not meet the bill by plea or answer, a decree in the cause will be one upon the bill taken for confessed as to him.

3. SAME.

    A mere suggestion to the court by a defendant that his rights are involved in another pending cause will not alone suffice to prevent decree against him upon the bill taken for confessed. If he would rely upon the pendency of the other cause as a defense to the bill, he must plead it in such a way as to show that it is a bar, or that the other cause has priority of jurisdiction.

Appeal from Circuit Court, Wood County.

Bill by Julius Katzenstein against Isaac Prager, Friedman's executors, and others. Decree for plaintiff, and Friedman's executors, and others, appeal.

*Dismissed.*

*McCluer & McCluer* and *H. P. Camden,* for appellants.

*C. A. Kreps* and *Merrick & Smith,* for appellee.

ROBINSON, PRESIDENT:

Isaac Prager & Son, insolvent merchants at Parkersburg, made a general assignment for the benefit of creditors on December 29, 1896. Previous to this assignment, on that day, an attachment was levied on the property which was transferred by the assignment. This attachment was in favor of Katzenstein, of Cincinnati. On the second day thereafter Friedman, of Baltimore, sued out attachments against Isaac Prager & Son and Isaac Prager individually, which were levied on the same property. On that day Katzenstein instituted his suit in chancery for the assertion of his attachment lien, for the appointment of a receiver of the property, and for a proper distribution of the assets of the insolvent firm among its creditors. And on the same day Friedman also instituted suits in chancery, setting up his attachment liens, assailing the assignment as fraudulent on the part of Isaac Prager & Son, Keller, the trustee, and Katzenstein, and seeking to overthrow the assignment as a scheme conceived and promoted by them for the purpose of hindering and delaying creditors and avoiding the payment of debts. The court refused to appoint the receiver prayed for in the Katzenstein suit and the trustee proceeded to administer the assets for the benefit of the cerditors.

The trustee made sale, at auction, of the stock of goods transferred by the assignment and Katzenstein became the purchaser for the sum of $16,250.00. The First National Bank of Parkersburg had also proceeded against the insolvent firm by proceedings in attachment and by a suit in chancery. A part of the goods purchased by Katzenstein were taken from him by the sheriff, under the bank's attachment, and were subjected to the debt claimed by the bank. The litigation on behalf of the bank was long pending. It was finally in this Court. A decision, reported in 50 W. Va. 660, was entered here in March, 1902. Until the date of that decision the other proceedings in relation to the estate of the insolvents rested. It seems that all who were interested awaited the determination of the questions involved in the suit of the bank. In the meantime, Keller,

the trustee in the assignment, became wholly incapacitated by mental derangement.

In April, 1902, soon after the bank's case was determined here, Friedman filed an amended and supplemental bill in that one of his chancery suits which claimed his debt as due from the insolvent partnership. In his other suit, he claimed the debt from Isaac Prager individually. Yet he asserted against the firm that it had assumed this individual debt of Isaac Prager. And by an action of *assumpsit,* Friedman also claimed the same indebtedness from Paul Prager, who was not a member of the insolvent firm, averring that he had assumed to pay the indebtedness. Friedman made Katzenstein a party to the amended and supplemental bill, renewed his attack upon the assignment and the sale to Katzenstein thereunder as fraudulent, asserted that his attachments were liens upon the assets, demanded an accounting by the trustee, and prayed the appointment of a receiver to collect and administer the assets under order of the court. He stated a case similar to that which the bank had sustained. In August, 1902, a demurrer to this bill was sustained. Later, he filed a second amended and supplemental bill. In this suit Katzenstein appeared, demurred, and fully answered.

On August 12, 1902, Katzenstein filed an amended and supplemental bill in his suit. He made Friedman a party, averred the incapacity of the trustee, again asked the appointment of a receiver, prayed a settlement of the trustee's accounts, and sought a distribution of the assets among the creditors. He expressly assailed the Friedman suits as inconsistent, fraudulent, and vexatious. He emphatically averred that Friedman held no debt against the insolvent firm, that the debt which Friedman claimed was the individual debt of Isaac Prager, and that the firm had not assumed to pay it. The debt claimed by Friedman was specifically and directly assailed and its existence as a claim against the insolvent firm was brought into issue. Katzenstein, in this amended and supplemental bill, also claimed the right to be subrogated to the lien that had been declared in favor of the bank in its suit for the amount realized by a sale of the goods taken from him. By decree of February 13, 1903, the death of Keller, the trustee, having been suggested, the suit was revived as against his administrator, a receiver of

the estate of the insolvents was appointed, and the cause was referred to a commissioner for the ascertainments, accounting, and settlement usually demanded in cases of its character. This suit of Katzenstein was not matured as to Friedman by service of process, order of publication, or appearance, but after the death of Friedman there was a revival against his executors and an order of publication as to them. At this time, July, 1904, the cause was pending on the order of reference. The executors of Friedman appeared before the commissioner, and filed petitions addressed to the commissioner in which they set forth the pendency of their suits in the same court. They stated that this appearance was in answer to the command of the order of publication that they appear and do what was necessary to protect their interests. They suggested to the commissioner that he report to the court the pendency of their suits, the rights claimed by them in those suits, and the fact that if they prevailed in the same they would be entitled to a lien on the assets of the insolvent estate so as to take precedence over other creditors. They asked that their proceedings and suits be taken and considered as a part of their petitions, and offered to file certified copies from the records if the commissioner should desire them to do so. The gist of these petitions was that the commissioner should report to the court the pendency of the suits of the petitioners. They sought nothing else. They did not seek the allowance of the Friedman debt. In one of them the petitioners in fact object to any action of the commissioner upon that debt. Nor do these petitions pretend to answer the Katzenstein bill. They make no reference to any of its allegations. They do not answer the allegation that the Friedman debt is the individual obligation of Isaac Prager—that the Friedman debt does not bind the assets of the insolvent firm.

Lehman & Cohen and Strauss Brothers filed petitions to the commissioner which were the same in substance and effect as those filed by Friedman's executors. These parties also had suits pending which were similar to those of Friedman's executors. By these suits they sought to fix liens on the assets of the insolvent firm by setting up the same grounds of fraud in the assignment that were asserted in the Friedman suits. The commissioner in his report notes the filing of all these petitions under the heading: "The claim of Menka Friedman,

Lehman and Cohen and Strauss Brothers." That part of the report closes with the following: "There being no proof of any of these debts your commissioner could not report them as proven debts and it appearing that suits are pending in which they will be directly adjudicated, your commissioner believes that those cases should be disposed of before he can report upon the debts and is of the opinion that if those parties are successful in their suits that it is most probable that it will be decided that they have a prior claim to the property of Prager and Son involved in this suit."

Friedman's executors, Lehman & Cohen and Strauss Brothers filed exceptions to the report of the commissioner. In these exceptions they again brought to the attention of the court the pendency of their suits. They went further and excepted to the allowance of the claim of Katzenstein and the allowance of commissions and credits to the trustee. They made no exception to the failure of the commissioner to report their claim against the assets of the insolvent firm. They expressly state that the exceptions are not filed "with the end in view of litigating or determining the claim of exceptors in this proceeding." Katzenstein excepted because the commissioner did not affirmatively report that the Friedman debt was not a claim on the assets of the insolvent firm. This exception of Katzenstein was in accord with his insistence in the Friedman suits as well as in his own—that the debt due Friedman was the individual debt of Isaac Prager.

The Katzenstein cause was finally heard upon the report of the commissioner and the papers and exceptions filed therewith. The court overruled the exceptions of Friedman's executors, Lehman & Cohen, and Strauss Brothers, sustained the exception of Katzenstein, and entered a decree regardless of the pendency of the other suits. No provision was made in the decree for the claims of Lehman & Cohen and Strauss Brothers, and the Friedman debt was treated only as the individual debt of Isaac Prager and provision made for it accordingly. Katzenstein was subrogated to the lien of the bank. From this decree, Friedman's executors appealed. Lehman & Cohen and Strauss Brothers obtained a separate appeal.

The appellants maintain that it was error to ignore the pend-

ency of their suits. They insist that the court should have stayed the Katzenstein suit until the determination of their suits. And they also insist that, in any event, the records of their cases were before the commissioner and that those records justified the decrees for their respective debts as liens on the assets of the insolvent firm in priority to general creditors. They assign many errors in the decree. On the other hand the appellee, Katzenstein, makes the point that the decree is one upon a bill confessed as to the appellants and that they are, therefore, not entitled to maintain appeals therefrom, since they have not moved in the court below for correction of the errors of which they complain. He also maintains that the records in the other suits are not a part of the record made in his suit in the court below, and insists upon a motion made by him to expunge from the printed record before us all that has been copied from the other suits.

Clearly does it appear that the suits were of such character as to call for a hearing upon them together as by a consolidation, or a stay of the one for a reasonable time until the others could be determined. But no consolidation or stay was demanded at any time by Friedman's executors, Lehman & Cohen, and Strauss Brothers who now complain of the action of the court in not staying the hearing of the Katzenstein suit. Though they were in court, by their appearances, at the time of the entry of the decree and long prior thereto, they did not seek to have the causes heard together nor to have the one await the other. They cannot complain of a failure to stay the cause, since they did not ask a stay. Neither can they complain of the decree which the court made. While they did appear in the Katzenstein suit by the petitions before the commissioner and by exceptions which they entered to the report, yet they did not answer the bill. Nor did they submit their claims for allowance and adjudication. They indeed declined to do so. Their petitions and exceptions plainly vouch this fact. They did not offer the records in their causes for the purpose of proving their claims, even if they could have done so properly. They referred to those records solely to show the pendency of their suits. Though the assets of the insolvent firm upon which they were seeking preference were in the custody of the court through the receivership in the Katzenstein suit, they declined and failed to come

into that cause and assert their alleged rights. They made no protest by exception to the report of the commissioner or otherwise against the entry of the decree disregarding those rights. True they brought to the attention of the court the pendency of their suits. But they offered no reason why those suits should have preference. By their default nothing appeared to prevent Katzenstein from proceeding to decree. They did appear and plainly recognize the Katzenstein suit as one of· which the court had jurisdiction, but that is all they did. Notwithstanding the bill assailed the contention that the Friedman debt was collectible from the assets of the insolvent firm, the executors stood by silently and suffered the material and vital allegations against them in this particular to go wholly undefended. These allegations were not controverted by an answer. Therefore they were properly taken as true and no proof was required to support them. Code 1906, chapter 125, section 36. Friedman's executors simply put themselves into a position for the bill to be taken as confessed against them and did nothing more. It is true that Lehman & Cohen and Strauss Brothers were in a different position from that of Friedman's executors since the bill made no direct attack on their debts. But they introduced nothing in the cause. They took no steps to protect their debts in a cause which had jurisdiction to adjudicate those debts and which had for distribution the fund of the insolvents applicable thereto. Yet they appeared and had the opportunity to do so. They did not answer the suit by setting up their claims against the assets of the insolvents. Nor did they resist the entry of the decree of which they now complain. The bill was confessed as to them also. *Watson* v. *Wigginton,* 28 W. Va. 533.

Generally, when a bill is heard without plea or answer to it the hearing is on the bill taken for confessed. A decree upon such hearing is "a decree on a bill taken for confessed." Hogg's Eq. Pro., section 580. The mere appearance of the defendant does not prevent the bill from being taken for confessed. *Steenrod* v. *Railroad Co.,* 25 W. Va. 137. He must do that which will protect the rights belonging to him that are affected by the bill. After an appearance, some plea or answer to the bill is required from the party who appears if he would prevent the bill from being taken for confessed as to him. A demurrer to

the bill is not sufficient for the purpose because it does not controvert the facts. *Steenrod* v. *Railroad Co., supra.* Nor can one rely upon a mere suggestion to the court that his rights are in litigation in another suit, as the appellants seek to do. He must plead the pendency of the other suit in such a way as to show that it is a bar to the suit in which the plea is filed or has priority of jurisdiction over that suit. He must recognize that his rights are also involved in the suit in which he appears and must take proper steps to protect those rights in that cause, otherwise he cannot complain if there is an adjudication against him. So, it has been held that if a defendant appears and files an answer which he subsequently withdraws and the cause is then heard on the bill, the decree rendered is one by confession. *Bock* v. *Bock,* 24 W. Va. 586. There must be direct defense to a bill by pleadings or other steps fitting its character if a defendant who is summoned, or who enters an appearance recognizing the jurisdiction of the court, would not have decree *pro confesso* against him. *Walson* v. *Wigginton, supra.*

The decree from which the appeals have been taken was entered upon a bill confessed as to the appellants. No motion to correct the alleged errors in the decree has been made by appellants in the court below and there overruled. Therefore, we must dismiss both appeals as improvidently awarded. The errors assigned cannot be noticed. The appellants made no defense to the suit below. Surely they cannot make defense here for the first time.

*Dismissed.*