𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

BATTAILE AND ALS V. MARYLAND HOSPITAL FOR THE INSANE.

December 15th, 1881.

1. CHANCERY PRACTICE—*Final decree.*—The established definition of a final decree is : "A decree that ends the cause, so that no further action of the court *in the cause* is necessary."

2. IDEM.  IDEM—*Subsequent proceedings.*—All decrees, orders and proceedings in a cause after the rendition of a final decree are erroneous, and must be reversed.  And so, all decrees, orders and proceedings before a final decree, however erroneous, must stand.

3. IDEM.  IDEM—*How set aside.*—There are but two ways known to the law whereby a final decree (not on a confessed bill) can be set aside—that is, by bill of review or by appeal.

4. IDEM—*Idem.*—In a cause land is sold and proceeds distributed as decreed. Commissioner makes his final report showing completion of his collections and a balance in his hands for final distribution.  The cause is then heard on the bill, answers and other papers formerly read, and on the commissioner's report without exceptions.  The court confirmed the report, and decreed in conformity with it, and "that the cause be stricken from the docket."

HELD :

This is a final decree.

5. IDEM—*Reinstatement.*—The court, by its order, however erroneous, put the cause beyond its control, and could not upon discovery of the error recall it by the summary mode of directing "the cause to be reinstated on the docket."

6. IDEM—*Motion.*—The remedy by motion, under V. C., 1873, ch. 177, § 5, does not apply to such a decree, it not being on a bill confessed, nor the alleged error such as, under the statute, could be corrected in that summary way.

Appeal from decree of circuit court of Caroline county in suit of H. T. Battaile, plaintiff, against Laura Battaile, Virginia C. Battaile, and J. N. Battaile individually and as

administrator of Lawrence Battaile, deceased, and as committee of said Virginia C. Battaile, lunatic, defendants. The suit was instituted in 1866, to sell and divide the proceeds of a tract of land containing 512 acres, known as "Oak Hill," and situated in Caroline county, which had descended from said Lawrence Battaile, who died in 1862, intestate, on his four children, the parties above named. In May, 1866, a decree of sale was entered, and John Washington, as special commissioner, was directed to make the sale. In September, 1867, the president and directors of the Maryland Hospital for the Insane, at Baltimore, filed in the suit their petition, setting forth that Lawrence Battaile had in his lifetime contracted with petitioner for the keeping and care of the lunatic, Virginia C. Battaile, and agreed to pay six dollars a week therefor; and that there was due petitioner a large sum of money, of which an account of items is filed, running from 1st July, 1861, to 1st July, 1867, and amounting to about $2,000, without interest. Answers were filed, and on those answers and the petition, but without taking an account, the court decreed that the account, to the amount of $2,236.54, with interest, subject to deduction of $204, with interest, be paid the petitioner; and that the amount be apportioned so as to charge the estate of Lawrence Battaile up to the time of his death, and the residue to be paid out of the estate of the lunatic, and if her estate proved insufficient, then the balance to be paid out of the estate of her father. The land was sold for about $5,000. The sale was confirmed. Commissioner Washington was ordered to collect the proceeds, and pay first the portion charged on Lawrence Battaile's estate, and the lunatic's share of the balance, to the hospital. And it appearing that her share would not satisfy the debt of the hospital, Commissioner W. was decreed, March, 1870, to sell the lunatic's one-fourth share of a tract of land containing 400 acres, known as "Collin-

brook," and situated in Loudoun county, which descended from her mother. In March, 1872, Commissioner W. reported that he had collected the entire sale-money and distributed the same as directed, except that he had in his hands $272.50 due the hospital, as the creditor of Virginia C. Battaile; $256.02 due W. J. Dickinson as the attaching creditor of Laura Battaile; and $16.58 due the latter. Thereupon the court entered the following decree:

" And this cause coming on to be heard upon the papers formerly read and the report of Commissioner John Washington, which bears date 25th of March, 1872, and is the final distribution of the balance of the purchase money arising from the sale of the land in this cause mentioned, and to which report no exception has been taken by any party, was argued by counsel. On consideration whereof, the court doth adjudge, order and decree, that the said report be confirmed, and that John Washington pay to the president and directors of the Maryland Hospital for the Insane the sum of two hundred and seventy-two dollars and fifty cents; and to William J. Dickinson, the attaching creditor of Laura Battaile, the sum of two hundred and fifty-six dollars and two cents (which sum has been paid to said William J. Dickinson as per receipt filed in this cause appears), and to Laura Battaile the sum of sixteen dollars and fifty-eight cents, and that *this cause be stricken from the docket.*"

Nothing more was done until 25th March, 1874, when, without notice to any of the parties, the following order was entered:

" On motion of the Maryland Hospital for the Insane, it is ordered that this cause, which has been erroneously stricken from the docket, be reinstated."

John Washington having declined to act as commissioner to sell the Loudoun land, J. T. Mason was by decree of the next day substituted, and directed to sell the same. He

did make and report sale. The sale was not confirmed. Before a resale was made, Virginia C. Battaile, by her committee, obtained an injunction. After various proceedings, some of them irregular and informal, amongst which was a report of Commissioner Moncure showing the balance due the hospital, as of 29th September, 1876, to be $1,864.66, and a second report of same showing the balance due the lunatic from her committee to be $520.15, as of January 1st, 1877, the hospital filed a petition in March, 1878, in the nature of a bill of review, praying that the decree of September, 1867, be reviewed and amended, and a decree entered charging the balance due petitioner directly upon the estate in the first instance of Lawrence Battaile, and that J. N. Battaile, H. T. Battaile, and Laura Battaile, who received, each, a fourth of the net proceeds of the sale of the Caroline land, be required to pay the petitioners that balance. This petition was answered by the Battailes, who, among other things, set up that it was too late after the lapse of three years to file a bill to review the decree of September, 1867.

On 28th October, 1878, the circuit court heard the cause on the papers formerly read, the last mentioned petition, demurrer, plea, answers, and the reports of Commissioner Moncure, and decreed, among other things, that J. N. Battaile, as committee, pay the said balance in his hands to the petitioner, and that J. N. Battaile, H. T. Battaile, and Laura Battaile each pay the petitioner one-third of the balance due it and of its costs. From this decree the Battailes obtained an appeal from one of the judges of this court.

*Guy & Gilliam, J. M. Hudgins,* for appellants.

*Marye & Fitzhugh, Washington & Chandler,* for appellees.

BURKS, J., delivered the opinion of the court.

Many questions supposed by the counsel on the one side or the other to arise in this case have been debated at the bar.   Among these are, whether the claim of the Maryland Hospital for the Insane, if established, is chargeable on the estate of Lawrence Battaile, or of his daughter Virginia C. (the lunatic), or should be apportioned between the two (*Stinson* v. *Prescott*, 15 Gray, 335), or whether the latter is primarily bound and the former only secondarily, and, in any event, whether the claimant had the right to intervene in the partition suit in the mode pursued; and on both sides many alleged errors and irregularities in the proceedings, from their inception to the last decree entered, are complained of.   It is not necessary to consider most, if any, of these questions, if, as contended for the appellants, the decree of March, 1872, is final in its nature. If it is final, all the decrees, orders, and proceedings of its rendition are erroneous and should be reversed.   There are but two ways known to the law by which such a decree could be set aside—by bill of review in the court which rendered it, or appeal to this court.   Neither was resorted to within the time limited by statute.   The remedy by motion (Code of 1873, ch. 177, § 5) does not apply; for the decree was not upon a bill taken for confessed, nor the alleged error such as, under the statute, could be corrected in that summary mode.

If the decree was final it must stand, however erroneous it may be.   And so of all the decrees, orders, and proceedings ahead of it.   Neither appellants nor appellees can, on the present appeal, assail them here.

The only object of the original bill seems to have been the sale of the Caroline land and a division of the proceeds among the heirs of Lawrence Battaile.   The Loudoun land

was mentioned incidentally, but no sale of it or partition was asked for. The sale prayed for was ordered, but before it was made the Maryland Hospital for the Insane filed its petition in the cause, setting out its claim and asking payment. The question was raised by the pleadings on the petition whether the claim should be paid by the estate of the decedent, Lawrence Battaile, or by the individual estate of the lunatic, and at the hearing in September, 1867, the court decided and decreed that the debt should be apportioned, charging the estate of the decedent with such part as had become due before his death, and the estate of the lunatic with the residue, and if her estate was insufficient to pay such residue, that the estate of the decedent should make up the deficiency, and the committee of the lunatic was directed to pay according to the decree.

The land was sold by the commissioner, as ordered, and from the proceeds of sale he first paid so much of the debt as had become due in the lifetime of Battaile, and the residue of the proceeds he divided into four parts (there being four heirs), and from time to time, as collections were made, paid the lunatic's share towards the debt and the other shares to the parties entitled. It being apparent by the sale that the debt would not be satisfied by the proceeds thus applied, as had been ordered, the court, in March, 1870, by decree of that date, not founded on any prayer of the bill or petition, ordered a sale (without prescribing the terms) of the lunatic's interest in the Loudoun lands, and directed the proceeds to be applied to the discharge of the hospital debt. Two years afterwards—to wit : in March, 1872—the commissioner who had sold the Caroline land made his final report, showing the completion of his collections and a balance in his hands for final distribution. The cause was then heard upon the papers formerly read and the report of the commissioner without

exceptions. The court confirmed the report and decreed in conformity with it, and that "the cause should be stricken from the docket." Two years after that the following order was entered: "On motion of the Maryland Hospital for the Insane, it is ordered that this cause, which has been erroneously struck from the docket, be reinstated." This order, it would seem, was made without notice to any party, and was followed by the proceedings and decrees before adverted to, of which the appellants complain.

At the time (March, 1872) the decree was made striking the cause from the docket, the decree of 1870, ordering the sale of the Loudoun land was unexecuted. It remained unexecuted when the order reinstating was made.

Now, if the decree of 1870 had been carried fully into effect when the decree of March, 1872, was rendered, and the hospital debt had been fully paid, no one will doubt, I suppose, that the latter would have been a final decree in every sense of the word, whether the cause was struck from the docket or not. Is its finality affected by the fact that the prior decree had not been executed? It seems to me not. After the court had disposed of all the money under its control and in the same decree directs the cause to be struck from the docket, what does the direction mean? It must mean that, in the opinion of the court, the cause is ended—that no further action of the court *in the cause* is necessary. That is the established definition of a final decree. The direction can mean nothing else. It is, and in the nature of things must be, an adjudication that everything has been done in the cause that the court intends to do, and hence there is no longer any necessity of retaining it on the docket. The unconditional order striking from the docket, appended to such a decree, absolutely and unequivocally imports judicial determination and a final disposition of the pending cause. The decree may be erro-

neous, but the error does not render it less final. The court, by its order, has. put the cause beyond its control, and it cannot, upon discovery of the error, recall it in a summary way and resume a jurisdiction which has been exhausted. The party aggrieved is by no means without remedy. The law points it out. It is plain and well understood. The error being one of law and apparent on the face of the decree, it may be corrected by bill of review or appeal. It may be said that where, as in this case, the error is so obvious, it could be corrected as well on motion as in the other modes pointed out. This may be so in point of fact, but as matter of law it is otherwise. It is not the province of courts to devise remedies to meet cases of supposed hardship. The law gives the remedies, and if parties do not pursue them the courts are without power to afford relief.

I am of opinion that all the proceedings, orders and decrees since the decree of March, 1872, should be reversed, and that that decree and every other preceding it should stand as we find them. If the Maryland Hospital for the Insane has any remedy by original proceeding to enforce the decree of October, 1870, or other remedy for the collection of the balance of the debt it claims (as to which I express no opinion), it can pursue it.

It was argued that the petitions, one or both of them, filed by the Hospital for the Insane after the decree of March, 1872, are in the nature of original bills for relief, and may be so treated. I am of a different opinion. The first is in terms and in fact an amended petition filed in the original cause, and the second is a bill of review, or in the nature of a bill of review. It assails the decree of September, 1867, as erroneous, and seeks to have it set aside or the alleged errors corrected, and the decree (the last rendered) based upon it in effect, though not in terms, reverses to some extent the prior adjudications, and requires parties

who had received money thereunder to pay a large part of it over to the petitioning creditor.    Neither petition can, in my opinion, be considered as an original proceeding.

STAPLES, J., dissented so far as the opinion of Burks, J., declared the decree of March, 1872, *final* as to *all* of the parties.  He thought the decree *not* final as to the lunatic, but final as to the other heirs of Lawrence Battaile.

DECREE REVERSED.