## In Equity.

### GEORGE W. PARSONS *vs.* WILBUR F. STEVENS et al.

### Kennebec.    Opinion September 14, 1910.

*Equity.   Procedure.   Orders and Decrees.   Date of Taking Effect.   Entering and
Filing Decree.   Final Decree.   Right to Vacate.   "Consent Decree."
Revised Statutes, chapter 79, sections 11, 28, 38, 39.*

1.  In this State equity procedure is not from term to term but is from
day to day, and orders and decrees in equity cases date and have effect
as of the day they are made, though made during a regular term of court.

2.  The signing, entering and filing a decree as and for the final decree in
an equity suit is equivalent to the enrollment of the final decree under
the older procedure, and has the same effect to end the suit if no appeal
be taken.

3.  After the signing, entering and filing a final decree in equity, the
proper remedy for any error therein (other than clerical) is by appeal, or
by bill or petition for review.

4.  When, after issue joined, a decree has been intentionally and regularly
signed, entered and filed as and for the final decree in an equity suit, it
cannot be withdrawn or otherwise vacated, except by consent, even by the
justice who made it, because of alleged errors therein, at least in cases
where the remedy by appeal or petition for review has not been lost with-
out fault of the aggrieved party.

5.  A decree not made upon default or nil dicit, but after answer filed,
issue joined, and evidence taken, is not a "decree pro confesso."

In equity.   On appeal and exceptions by plaintiff.   Exceptions
sustained.

Bill in equity praying that a certain deed of warranty given by
the plaintiff to the defendants "be rectified and reformed in accord-
ance with the mutual intent of the parties thereof at the time said
deed was made, executed and delivered, by adding to the description
thereof" certain words so that the deed as reformed should except a
certain right of way from the description and covenants.   This
cause grew out of an action of law brought by the defendants against
the plaintiff upon the covenants of warranty in the aforesaid deed in

VOL. CVII 5

which said action at law the defendants claimed damages for breach of the covenants in said deed and assigned as said breach the fact that the said premises so conveyed to them were subject to the aforesaid right of way. The defendants filed an answer to the plaintiff's bill and the plaintiff filed a replication. The bill of exceptions further states the case as follows:

"This cause came on to be heard on the twenty-ninth day of October, 1909, and issues of fact were framed for a jury.

"After the cause was opened to a jury and a part of the evidence for the plaintiff introduced, court adjourned for the noon recess. At the time of adjournment the presiding Justice stated that he should rule that a certain right of way conveyed by the plaintiff to one Jones would be confined to a right of way 'as used' at the time of such conveyance. The words 'as used' were actually employed by said Justice to signify 'in the same location as.'

"Before the coming in of court in the afternoon in the presence of the presiding Justice the defendants' counsel proposed that a final decree by consent be entered sustaining the plaintiff's bill and reforming the deed named therein as prayed for. Such final decree was drawn, signed by the presiding Justice, filed in court and consented to by both parties.

"The presiding Justice then announced that the cause had been settled by the parties and dismissed the jury from its consideration.

"On the fifth day of November, 1909, the defendants moved that said decree be set aside on the ground that they understood the words 'as used,' as employed by the presiding Justice, to refer not to location but as equivalent to the words 'for the same uses as.' The plaintiffs were in no wise responsible for such misunderstanding. The presiding Justice found the foregoing facts and also that the defendant did so misunderstand the meaning in which he employed the words 'as used,' in such statement, and that such misunderstanding was the sole motive which induced them to propose the said decree to the plaintiff and to consent to its being entered, signed and filed.

"The court thereupon ruled that it was within its discretion to withdraw the decree and allow the action to stand for trial."

The plaintiff excepted to the aforesaid ruling and also filed an appeal.

The decree of the presiding Justice granting the motion of the defendants to have the aforesaid final decree withdrawn, is as follows : "Motion granted and final decree ordered to be withdrawn, said decree having been signed, entered and agreed to because of a mistake of fact, and a misunderstanding between the sitting Justice and counsel for defendants as to the scope of the proposed ruling, on the strength of which the defendant counsel and his clients consented to the settlement and the final decree without completing the trial. This motion is granted hereon upon the payment by the defendants to the plaintiff of the sum of forty dollars to reimburse him towards expenses and costs."

*Williamson & Burleigh*, for plaintiff.

*L. T. Carleton*, for defendants.

SITTING : EMERY, C. J., SAVAGE, PEABODY, KING, BIRD, JJ.

WHITEHOUSE AND SPEAR, JJ., dissenting.

EMERY, C. J. The material allegations of fact in the bill of exceptions in this case may be summarized as follows : Stevens brought an action of covenant broken against Parsons for breach of his covenant of warranty against incumbrances in his deed of conveyance of certain land to Stevens. The breach alleged was the existence of a right of way in a third party across the land. Upon the bringing of that suit, Parsons brought this bill in equity against Stevens to procure a reformation of the deed he had given Stevens so that it should except the right of way from the description and covenants. In this equity suit an answer was filed and also the usual replication.

At the next term of this court in the county the parties appeared and both suits were set for trial together before the same jury, issues of fact in the equity suit having been framed for the jury. After some evidence had been introduced by Parsons, the plaintiff in the equity suit, the court adjourned for the noon recess. At the time of such adjournment the presiding Justice stated that "he should

rule that a certain right of way conveyed by Parsons to one Jones would be confined to a right of way 'as used' at the time of such conveyance." During the recess, Stevens' counsel, in the presence of the presiding Justice, proposed that the entry "Neither party, no further action for the same cause" be made in the action at law, and that a final decree by consent be entered in the equity suit sustaining the bill and reforming the deed as prayed for. Counsel for Parsons accepted the proposition, and the entry agreed upon was made in open court in the action at law, and in the equity suit the decree agreed upon was drawn, signed by the presiding Justice, filed and entered. The presiding Justice thereupon announced that the cases had been settled and dismissed the jury from further consideration of them.

The decree was as follows, viz : "That the deed dated May 19, 1906, from said plaintiff to said defendants be reformed by adding thereto after the words "well situated on said premises," the words "also excepting and reserving to said Maude M. Jones, her heirs and assigns, a right of way over and across the west side of said Wing lot from Main Street to the fence first mentioned herein as the second bound of the land herein conveyed, as reserved to said Maud M. Jones in deed from said grantor to said Maud M. Jones, dated May 17, 1906, and recorded in Kennebec County Registry of Deeds, Book 470, Page 399."

Seven days afterward, but during the same term, Stevens' counsel, instead of taking an appeal, moved the single Justice to withdraw and set aside the decree in equity, on the ground that he understood the words "as used" in the statement by the presiding Justice as to what his ruling would be, to refer, not to location, but as equivalent to the words "for the same uses as." The Justice, intended to convey the former idea, viz, "in the same location as" and employed the words "as used" for that purpose, and he found as facts that Stevens' counsel understood the words to signify "for the same uses as," and but for such understanding would not have agreed to the entry and decree. Neither Parsons nor his counsel was in any way responsible for such misunderstanding.

The presiding Justice against the objection of Parsons' counsel in the same case withdrew the decree filed in the equity suit, and ordered the càse to stand upon the docket for trial. Parsons' counsel thereupon excepted to this ruling. The question presented is important, being whether, upon the facts stated, the case was so finally disposed of and ended, that the single Justice should not have undertaken upon mere motion of counsel summarily to adjudicate upon the questions of law and fact involved, but should have remitted the complaining party to his right of appeal or to the usual and more deliberate procedure of review provided for obtaining relief from alleged mistakes in judgments and agreements.

There must of course be some point or stage in every court procedure, legal or equitable, when the particular cause is finally disposed of, its thread cut, and the parties are out of court, to be brought in again only by some new process duly served upon them. Where the court is open during regular terms only, it is common learning that the final adjournment of the term ends the power of the court over final judgments and decrees passed at the term. Its orders, decrees and judgments then existing, made as intended at the time, must stand until corrected or reversed upon some new proceeding by way of review. *Bank of U. S.* v. *Mass.*, 6 How. 31 at page 38; *Bronson* v. *Schulten*, 104 U. S. 410. This rule, or principle, applies to suits in equity as well as to actions at law. *Brooks* v. *Railroad Co.*, 102 U. S. 107, was a suit in equity (see same case 101 U. S. 443) in which it was decided that a petition for rehearing presented after the term at which the decree was made could not be entertained. The court said, "At the end of the term parties are discharged from further attendance on all cases decided, and we have no power to bring them back. After that we can do no more than correct any clerical errors that may be found in the record of what we have done." In *Mummys* v. *Morgan's Heirs*, 3 Littell (Ky.) 295, it was said, "Where a final decree is once given and enrolled and the term has passed at which it was done the decree if defective or erroneous can only be altered or reversed by the same court on a bill of review filed for that purpose." See also *Lilly* v. *Shaw*, 59 Ill. 72; *Sturtevant* v. *Stanton*, 47 Conn. 579; *Bataille*

v. *Hospital,* 76 Va. 63; *Jones* v. *Turner,* 81 Va. 709; In *Ernest Tosetti, Brewing Co.* v. *Kochler,* 200 Ill. 369, 65 N. E. 636, the court held that a motion to vacate a decree, filed after the term, was too late, saying "The decree was regularly signed and filed and was entered of record and the power of the court over the case was thereby exhausted." In 2 Beach on Modern Equity Practice, sec. 850, the law is stated as follows: "The power of the court over the action and over the parties to it is exhausted by the final adjournment of the term at which the final decree is entered, and it cannot resume jurisdiction either over the subject matter or the parties without a new proceeding and the service therein of the ordinary original process."

But where a court is not confined to terms, is always open, and can make orders, decrees, etc., including final decrees, on any day without regard to terms of court, there evidently can be no such test of finality. There must be some other point of time at which a decree, intentionally made as a final decree, becomes actually final and operative; when that suit is ended and the parties dismissed. In England that point was when the final decree was enrolled, irrespective of terms. *Pitman* v. *Thornton,* 65 Maine, 96, 99; *Clapp* v. *Thaxter,* 7 Gray, 384; *Brown* v. *Aspden,* 14 How. 26; 2 Smith's Chancery Practice, pages 5 et seq.

In this State it is well settled, at least since the Equity Procedure Act of 1881, that there are no terms in equity proceedings, that final decrees, as well as other decrees and orders may be made upon any day except the few upon which no court can be held, that the signing, entering and filing a final decree is equivalent to its record or enrollment, and that the decree becomes operative from that time. R. S., ch. 79, secs. 11, 28. *Pitman* v. *Thornton,* 65 Maine, 96, page 98. *Gilpatrick* v. *Glidden,* 82 Maine, 201, at pages 203, 204. *Allan* v. *Allan,* 101 Maine, 153, at page 156. It is the same in Massachusetts since the Act of 1859. *Thompson* v. *Goulding,* 5 Allen, 81; *White* v. *Gove,* 183 Mass. 333.

In view of the statute of 1881 as construed above, it must be evident that the fact that the decree in this case was filed during a stated term of the court did not delay its operation to the end of the

term, and the fact that the motion to vacate was made during the same term does not give it any better position than if filed after the term. The idea of "term" should be eliminated from the mind, and the case considered as if the decree was filed and the motion made out of term time.

If the end of the term is the end of the court's power to vacate, reverse or materially change a final decree made as of that term except upon some new process and notice as for review as held in the cases above cited to that point, it would seem that where the final decree is made as of a particular day without regard to court terms, that day is the end of such power. There is also direct authority to the same effect. In *Brown* v. *Aspden*, 14 How. 26, it was said "By the established rule of chancery practice a rehearing in the sense in which that term is used in proceedings in equity cannot be allowed after a decree is enrolled." As said above, signing, entering and filing a decree is equivalent to enrollment. In *Maynard* v. *Pereault*, 30 Mich. 160, the court held that by the enrollment of the decree the case had reached a stage in which it was subject to be opened for re-examination only on bill of review. In *Bennett* v. *Winter*, 2 Johns, ch. (N. Y.) 205, a petition accompanied with due notice to open a final decree was denied upon the sole ground that "a final decree regularly obtained and enrolled cannot be opened or altered in this court but upon a bill of review." See also *Cummings* v. *Parker*, 63 N. H. 198; *Jones* v. *Davenport*, 45 N. J. Eq. 77; *Thurston* v. *Devecmon*, 30 Md. 210, 217; *Thompson* v. *Goulding*, 5 Allen, 81, and the Virginia cases above cited, 76 Va. 63, 81 Va. 709. The statute cited in the Massachusetts case was similar to our statute of 1881, now R. S., chapter 79, section 11 et seq. In Whitehouse Eq. Pr., section 526, it is laid down that in this State "after a final decree has been signed, filed and entered errors involving the merits of the case cannot be corrected by rehearing on motion or petition, the only remedy being by bill of review or the statutory petition for review." Much less it would seem could such a decree be wholly vacated upon simple motion. In *White* v. *Gove*, 183 Mass. 333, a decree dismissing the bill had been made and entered. The plaintiff afterward, within

thirty days, filed a motion that the decree be vacated and a rehearing granted, first, because the agreed statement of facts in the case was not authorized by the plaintiff; second, because the agreed statement was erroneous in many particulars; third, because it omitted many facts essential to the plaintiff's case. The motion was supported by affidavit. The Justice ruled he had not the power to vacate the decree and grant a rehearing. The Law Court held that the ruling was correct. The court said (page 340), "This ruling was founded upon the established principle that after the entry of a final decree in equity, as after the entry of a final judgment in a suit at law, the case is finally disposed of by the court subject to such rights of appeal, if any, as the statute gives, and the court has no further power to deal with the case except upon a bill of review. The principle thus declared to be established was fully and explicitly affirmed in the later case *Larkin* v. *Lawrence*, 195 Mass. 27, where the motion was filed only three days afterward. See also *Marshall Eng. Co.* v. *New Marshall Eng. Co.*, 203 Mass. 410, 416.

The probate court case, *Bergeron* v. *Cote*, 98 Maine, 415, does not conflict with the above cited authorities. There the decree was inadvertently made without hearing and without actual adjudication, was not in fact the judgment of the judge, and did not end the proceedings. Further, as was said by the court in that case, the new petition for an order of distribution reciting different facts was practically a petition for a revocation of the former order; and upon this new petition notice was given to all parties. The revocation therefore was not summary upon motion, but deliberate, on new petition and notice with right of appeal.

From the foregoing authorities, as well as from the nature of judicial proceedings, it must be held to be established as a general and necessary rule of equity procedure governing this court, that a decree once deliberately formulated, signed, entered and filed, cannot afterward be summarily revoked or vacated on motion for alleged mistakes of a party or even of the court; but that relief from such mistakes must be sought for through the more deliberate procedure provided for review, at least where such procedure would be

open to the complaining party but for his own fault. This view is in harmony with the language of the Maine Equity Procedure Act, R. S., chapter 79. In section 38 express provision is made for granting reviews for mistakes, etc., on petition upon which reasonable notice shall be given the other party of the time and place for the hearing. Sec. 39 affirms the power of the court "to hold all interlocutory orders and decrees subject to revision at any time before final decree." It is noticeable that the power of revision thus saved to the court in a given suit is limited to interlocutory decrees and is to be exercised before the final decree is made.

Of course the rule above stated does not prohibit an equity court from afterward, on motion, completing or perfecting its final decrees, by correcting clerical errors of omission and commission in preparing the draft. In some jurisdictions, also, it is held that final decrees of the class known as "decrees pro confesso," or decrees upon default, or nil dicit, without hearing, may in some cases be opened for hearing on petition, but we find no case where a final decree deliberately made after answer filed, issue joined and evidence heard, has been afterward vacated upon mere motion as in the same suit. In *Battaile* v. *Hospital*, 76 Va. 63, it was held that relief from the final decree could not be obtained by motion since "the decree was not upon a bill taken for confessed."

How a final decree upon a bill taken pro confesso may be vacated under the established rules of procedure in this State need not now be considered. Also in cases where a manifest injustice in the decree is alleged and the remedy by appeal or review has been lost without fault of the injured party, it may be that an equity court has inherent power upon due petition and notice to open the decree so far as to correct the injustice alleged and proved. What would be the power of this court in such cases, and how it should be exercised, with what notice and deliberation, with what right of appeal and exception, need not now be considered, since in this case the remedy by proceedings for review is still open, and it does not appear that any relief to which the plaintiff may be entitled cannot be obtained by those proceedings.

Recurring now to the decree in this case, it certainly is not within the class of "pro confesso" decrees. It answers none of the definitions of such decrees. It was not made upon default, or nil dicit. Answer was filed, issue was joined and evidence taken. The case and both parties were in court, at least by counsel, when the terms of the decree were settled. If not a "consent decree," it must be regarded as a decree embodying the then opinion of the court and made as such after consideration of the bill, answer and evidence. Not only was the opinion of the court thus actually formed and stated, but a final decree in accordance therewith was drafted, signed, entered and filed, the case announced as ended, and the parties dismissed. It is in all respect the decree which the court adjudged upon the pleadings and evidence to be the proper decree. Indeed, the motion of the defendant is not for any correction of the decree, but to have it wholly revoked that he may have another and second hearing and trial. Under the well settled rules of chancery practice above stated and illustrated, it must be held that the motion should not have been sustained and decree revoked, but that the defendant should have been remitted to remedies by way of appeal or review. At the time of the motion, the case had been decided upon pleadings and evidence, the parties had been dismissed, and the ordinary remedies for the correction of mistakes by appeal or bill for review had not been barred.

*Exception sustained.*

*Order withdrawing final decree annulled.*

*The final decree ordered restored.*

DISSENTING OPINION BY SPEAR, J., WHITEHOUSE, J., Concurring.

SPEAR, J.   I am unable to concur in the opinion.   I agree with all the Chief Justice has said with respect to the power of the court over orders, judgments and decrees before adjournment of the term in which they are made, and concede that the equity court is without terms and always open.   I do not, however, think that it can be declared that final decrees in equity in all cases are beyond the recall of the sitting Justice unless it is held that R. S., chap. 79, sec. 38, providing for review, was intended to be established as the exclusive remedy for the purpose of opening or modifying final decrees.   The statute does not in terms make this the exclusive remedy.   It therefore seems to me, in view of the purposes and scope of equity, that the statute should not be construed to prevent the sitting Justice from recalling or opening the decree not decided upon its merits, when, by that decree through error, an injustice has been done.   In other words, I believe that, in equity proceedings, this provision of the statute should be supplemented by the power of the court, to the end that the two working in conjunction, may effectuate a just result.   In the term "just result" is to be implied that neither delay, method of procedure nor any other contingency should be permitted to work an injustice to the adverse party.

In the case at bar we start out with the concession that the decree sought to be opened was calculated, if allowed to stand, to do an injustice to the petitioner.   The sitting Justice, who heard a portion of the evidence upon the merits of the case, and who consequently knows more about it than any other Justice can, undoubtedly entertained that view.   If the opinion of the Chief Justice is to stand, it is quite clear to my mind that review will not reach the error, and that the unjust judgment must prevail.   I have always supposed that equity was a rule calculated to do right where the law could not.   It is, in a sense, an enemy to the common law.   It came from the civil law, and was introduced into English jurisprudence after a hard struggle.   It was calculated, upon due consideration of every person's rights, to do justice regardless of common law rules.   Its purpose is to break the common law when the latter will not

bend.   It cannot therefore be applied according to any fixed theory of procedure.   It must meet each case upon the facts presented.

In this connection it may be observed that even the common law is not in all respects consistent.   The doctrine of estoppel is not common law, but a rule devised to defeat the common law.   The defacto doctrine is also exotic and established for the same purpose. Many other exceptions might be cited.   It would therefore appear that even the common law has been forced to become inconsistent with theoretical rules in order to establish legal rights.

In view of these suggestions, it seems to me that equity looks to justice — not speed.   It is better to be slow than to be wrong.   It should not be beheaded by mistake, accident or misapprehension.

I assume that in applying the rules of equity every technicality should be resolved in favor of justice inasmuch as it has been declared that where the rules of law and equity conflict, the latter shall prevail.   In other words, the broadest and most liberal interpretation should be given, where such interpretation is to enable the rules of equity to attain a just end.   It seems to me that in the opinion, the technical rule has been applied to defeat the ends of justice rather than to promote them.

It is intimated at least in the opinion, if I understand it correctly, that the decree sought to be withdrawn, may be a consent decree. If that be true I concede that the petitioner's case is at an end.   A consent decree can neither be withdrawn nor opened on review. I do not think this interpretation should be given the decree.   A decree which works an injustice should not be considered a consent decree unless it so appears in the decree itself.   It does not so appear in the decree in question.   It is a decree in the ordinary form, without even a suggestion of consent.   I think it also fair to affirm that the statement of facts, upon which the sitting Justice predicated his action in withdrawing the decree, should be assumed to be correct.   It appears from the words of the sitting Justice that the decree was ordered to be withdrawn "because of a mistake of fact, and a misunderstanding between the sitting Justice and counsel for defendants as to the scope of the proposed ruling."   It should also be further assumed that the amount ordered to be paid by the

petitioner in the nature of costs was a just amount and that the withdrawal of the decree did no pecuniary harm to the respondents. The facts further show that the rights of third parties in no way intervened, and that all the parties to the controversy were placed in statu quo in every respect. It is therefore evident that absolutely no injustice could result to the respondents by the withdrawal of the decree. The question, therefore, arises whether we shall establish a rule that works justice and not injury, or one that works injury and not justice. I further assume that no Justice of the Supreme Judicial Court, worthy of the name, would ever, through ignorance or prejudice, withdraw a decree in equity to the wrong of the party in whose favor it had been made. Hence, if this be true, no possible danger could ever arise from sustaining the authority of a sitting Justice to withdraw a decree, under circumstances like those in the case before us.

In *Bergeron* v. *Cote*, 98 Maine, 415, where a Judge of Probate exercised the authority of withdrawing an appeal, the court says: "We do not believe that any danger can result from the establishment of the doctrine that this power is vested in the Probate Court. There is no reason to apprehend that such a power may be unjustly exercised. It is vested in the same court which is entrusted with the original jurisdiction over all such matters." And here it may be said, as the cases to which I shall allude will show, that every case is peculiar to itself, *Robertson* v. *Miller*, infra, and does not become a precedent for any other particular case.

I now think it will appear that courts in equity have hitherto proceeded upon the theory of the suggestions herein made, as to the power and purpose of equity, and not on the theory of the opinion that litigation must end somewhere, and that a final decree is that end and cannot be recalled or opened. Now it is apparent, if final decrees are to be regarded as final judgments except upon review, there can be no exceptions to the rule.

But the books are full of exceptions, even the Massachusetts cases upon which the opinion relies admit this. And here it should be said that the discussion of the court in *Clapp* v. *Thaxter*, 7 Gray, 384, is not controlling, as the procedure in this case bears no

relation whatever to the procedure in the case before us. If I read the case correctly, the bill was dismissed by the Law Court and certified to the clerk, where judgment was entered, under a statute, as of the previous term of court. It was a decree upon this judgment which the petitioner sought to *reverse,* after the adjournment of the term at which the judgment had been entered, and all of the discussion with respect to final decrees is based upon the effect of this judgment. The implication from the finding of the court, however, is that if the petition for withdrawing the decree had been filed before these proceedings, ending in judgment, took place, the decree might have been withdrawn, for the court say: "This petition for a re-hearing comes too late." And then quote the statute providing for the entry of the judgment "as of the then last term of court, in the county where the action is pending, whether it be a law term or not." I hardly see how this case can be regarded as a precedent of any value.

In *Thompson* v. *Goulding,* 5 Allen, 81, the court discuss the same question and upon the point of setting aside the decree, cite *Clapp* v. *Thaxter,* supra, as their only authority. The court then makes the significant admission that there are, however, exceptions to this rule. Cases do not come within it where some clerical errors, mistakes and computations or irregularities in making up the record have occurred, or where a final decree has been made on default of a party through negligence or mistake of his solicitor, or by reason of want of notice to him of the pendency of the suit. It then says that the present case does not fall within any of the exceptions. This case, however, negatives the assumption that a final decree is necessarily the end of the litigation. It admits that in some cases it can be withdrawn.

In support of the doctrine that a final decree is not the end of litigation the authorities are ample. But the opinion of the Chief Justice says: "There must of course be some point in every court procedure, legal or equitable, when the particular case is finally disposed of, the thread cut, and the parties are out of court to be brought in again only by some new process 'duly served upon them.'"

Therefore the main ground upon which the opinion is based, that a final decree is the end and cannot be withdrawn, seems to be untenable.

Before proceeding to an analysis of the decisions directly relating to the withdrawal or opening of final decrees, I desire to cite *Bergeron, appellant*, from the decree of the Judge of Probate, 98 Maine, 415, as a case similar to the one before us, with reference both to the effect of a decree and the inherent power of the court to withdraw or cancel it. A final decree of a Judge of Probate should certainly be entitled to as much respect, either upon the ground of expedition or force of judgment, as a decree in equity. Yet the court held that such a decree, if erroneous, could be recalled. The principle herein stated is also applied to all courts in this language : "And this case is by no means an isolated one, for in the proceedings of *all courts* inadvertent errors will sometimes occur, frequently without the fault of any of the parties. The power to correct mistakes of this kind in its decrees, before such decrees have been acted upon, must necessarily exist in the court that made them, and such a power is essentially necessary for the promotion of justice." Then the court proceeds to say what is already above quoted from this case.

But the opinion undertakes to distinguish the *Bergeron* case by saying: "There the decree was inadvertently made without hearing and without actual adjudication, was not in fact the judgment of the Judge, and did not end the proceedings. Further, as was said by the court in that case, the new petition for an order of distribution reciting different facts was practically a petition for the revocation of the former order; and upon this new petition notice was given to all parties. The revocation therefore was not summary upon motion, but deliberate, on new petition and notice with right of appeal." I do not so read the case. The decree was certainly as advertently made as the decree before us. A petition for distribution, setting forth the facts, was filed, notice ordered and a decree of distribution made. No appeal was taken ; the case was absolutely ended. Appeal was the only way to reach the error of the decree. There was no negligence on the part of the Probate Judge. He

acted upon the petition, without any one appearing, as is probably done in nine cases out of ten, involving a similar question. The only error was in the statement of facts in the petition. There was no inadvertence or error on the part of the Judge in the performance of anything he had to do. But he found an injustice had been done without remedy, unless he recalled the decree; and this he did and the Law Court sustained his action as it ought to have done.

The opinion further says that the decree "was not in fact the judgment of the Judge." It was the judgment of the Judge upon the case presented, and had he not been vested with the power to recall the decree would have remained his judgment in spite of the error. It is also said it "did not end the proceedings." I certainly understand this differently. The decree was an order for distribution. After such order the administrator has nothing further to do with the court with respect to the distribution, and the court has no authority over an administrator in regard to the matter. The final act had been performed by the Judge. It then became an individual matter between the administrator and the distributees.

It is further said that notice was given to the parties. But the important thing to be observed is that no new process was required. A motion for revocation of the probate decree was all that was filed. Precisely what was done in the case at bar. It still seems to me that the *Bergeron* case is to all practical purposes a precedent for the action of the presiding Justice in the case before us, as here there was an actual inadvertence on the part of the Justice in so making a statement of the law, that it was capable of two interpretations.

In Whitehouse Equity Practice, section 303, he says: "Also the final decree based on the allegations of the bill taken as true, may be open on motion in writing (i. e. petition) for good cause shown even after several years have elapsed." In sec. 305 he also says: "A final decree on a bill taken pro confesso may be open upon motion in writing to enable a defendant to make a meritorious defense which has not been heard through surprise, accident or mistake." A decree pro confesso has the force of any regular decree, *Robertson* v. *Miller*, infra.

I have not been able to examine the English cases upon this point, but their bearing readily appears from the citations in the American cases.

*Parker* v. *Grant,* 1 Johnson Ch. 630, is a case in which after the filing of a final decree a motion was made to set it aside to permit the defendants to answer. Chancellor Kent says: "This is an application to the grace and favor of the court, to let in a party to defend, after a decree has been regularly entered against him by default." In this case, however, he dismissed the petition saying: "But I am now put in possession of the real defense, and, admitting all that is stated in the petition, it was undeserving of favor."

*Livingston* v. *Woolsey,* 3 Johnson Ch. 364, is a case in which the final decree was entered by default. Upon motion the decree was set aside, Chancellor Kent saying, quoting Lord Hardwicke: "If there is an irregularity in proceedings of the plaintiff, and the plaintiff insists upon a strict default of the defendant, as the courts of law say, 'It is very necessary that a person insisting upon a rigor should hit the bird in the eye.'"

*Lancing* v. *McPherson,* 3 Johnson, 425, is a case which Chancellor Kent stated as follows: "The defendant, McPherson, applies for two things. 1. That the decree taken pro confesso against him be set aside, on the ground of misapprehension, and that he has a good and substantial defense in respect to the claim against him for any deficiency, etc." In denying the first request the Chancellor said: "As to the first point the delay has been too long to justify the indulgence without a very special case made." It would therefore appear that if application had been made in season, the decree would have been set aside "on the ground of misapprehension." But the Chancellor did set aside a sale made by virtue of the decree upon the ground that "justice would seem to require it."

*Robertson* v. *Miller,* 3 N. J. Equity, 451, is a case in which the court quite fully discuss the ground upon which decrees are opened, the nature of the application to the court, the duty of the court and the rules to be applied. In this case a petition was filed to open a decree five and one-half years after it was made, which was refused. With respect to the nature of the petition the court says: "Appli-

cations of this character address themselves to the sound discretion of the court, arising out of considerations of each case as it is presented. No general rule can be found which will apply to all. They should be listened to, generally, with great caution, and ought not to be granted, where the result must be injurious to the complainant, who has conformed himself to the law of the court." As nearly all the cases cited relate to decrees upon bills taken pro confesso, it is here pertinent to note that a final decree taken pro confesso has the force and effect of any other final decree. The court say : "There is a great difference between opening an order to take the bill pro confesso and opening a decree pronounced upon it subsequently." 1 Hoff. Prac 551. "Such decrees are placed on the same footing as other decrees regularly made, and are not disturbed except under special circumstances." The court further say in speaking of decrees pro confesso : "The last is considered, when compared with the others, as sacred, and to be disturbed only for weighty reasons," and quotes *Lansing* v. *McPherson*, supra. While the reasons must be weighty, yet if sufficient, the final decree will be opened.

Here it is pertinent to observe that the only way in which the opinion undertakes to avoid the effect of the cases cited is to suggest a distinction between final decrees pro confesso and other final decrees. This the well settled rules of law do not warrant. No State court is entitled to greater consideration for perfection of its rules of equity procedure and the force of its equity decisions than that of New Jersey. But the New Jersey case above cited is an absolute answer to the position of the opinion upon this point.

It should also be noted in this case that the very distinction which the opinion seeks to establish came squarely before the court and was deliberately decided. The attitude of the New Jersey court it seems to me is the only logical one, in view of the results to be attained in recalling a decree. It will not be denied that the object of a final decree is to put an end to the litigation. Final means end. If final, there can be no difference between an enrolled decree, pro confesso, and any other enrolled decree except in the various steps that lead to the end. Why then can any final decree be recalled,

whether pro confesso or otherwise? It is evidently because the case has not been heard upon its merits, the various steps leading to the end not having been all completed, and, fearing that some injustice may have resulted from an exparte procedure, the court sometimes years afterward recalls a decree and opens a case. Why, when the same reason exists for recall should not any enrolled decree be recalled? The result of a call in the one case is precisely the result of a recall in the other,— to enable the case to be heard upon its merits, without putting the parties to the unnecessary expense of a new proceeding. But in the case at bar it was not a matter of fear that the proceeding was incomplete and that the decree might have done an injustice. It was a matter of knowledge.

And here it may be remarked that notwithstanding the opinion declares that the case was heard upon its merits, the record clearly shows otherwise. The opinion says : "Answer was filed, issue was joined and evidence taken. . . . It must be regarded as a decree embodying the then opinion of the court and made as such after consideration of the bill, answer and evidence." But the case shows the cause was not heard upon its merits. The motion to recall the decree the facts of which are in no way questioned states that the defendants "have been precluded for defending said suit to which they believe they have a full, complete and ample defense." The decree, signed by the sitting Justice, says that the defendants counsel and his clients consented to the settlement and final decree "*without completing the trial.*" The plaintiff even in his exceptions does not claim that the case was tried upon evidence. On the contrary he frankly concedes that : "After the cause was opened to the jury and a part of the evidence for the plaintiff introduced, the court adjourned," etc. And this was all the testimony produced, the defendants not having been heard at all. Finally in direct opposition to the declaration of facts made in the opinion, the plaintiff's exceptions admit the chief contention of the defendants,— no decision upon the merits and failure thereof by misunderstanding in the statement that : "On the fifth day of November 1909, the defendants move that said decree be set aside on the ground that they understood the words 'as used' as employed by the presiding Justice to refer

not to location but as equivalent to the words "for the same uses as," . . . . The presiding Justice found the foregoing facts and also that the defendants did so misunderstand the meaning in which he employed the words "and thereupon ordered that said decree be withdrawn and the cause continued for hearing."

And it is upon this utter absence of anything in the nature of a hearing that the opinion declares that the decree was one, "embodying the opinion of the Justice after consideration of the bill, answer and evidence," and upon which it undertakes to distinguish the equitable principle applicable to the decree at bar from that applicable to a pro confesso decree. Suffice it to say that the sitting Justice did not base his decree upon the evidence and that the case was not heard at all upon its merits. Not having been heard upon its merits the case comes squarely within the rule of the many cases cited in this dissent. In spirit and substance the decree before us was a pro confesso decree, as the answer was completely ignored and, through the consent of the defendant to the statement of the law capable of two interpretations in its application to the facts in the case, no defense was put in. And it is apparent that the introduction of evidence might have completely changed the interpretation given by the court. Instead of being a full hearing the evidence may have been just enough to mislead. And it is upon this state of facts that the opinion finally says in answer to the many cases showing the withdrawal and opening of final decrees pro confesso, "but we find no case where a final decree deliberately made after answer filed, issue joined and evidence heard has been afterward vacated upon mere motion as in the same suit." Nor do I. For when a case has been once heard upon its merits it is ended. And merits means not only heard but opportunity to be heard. But no distortion it seems to me can place the case at bar in the above catagory.

This analysis leads to what I deem the most important feature in the decision of this particular case, namely, that the opinion in its declaration of law and statement of facts applies to a supposed case and an assumed state of facts and not to the actual case disclosed by the record. I am frank to say, were the facts as stated in the

opinion and did the decree represent the mature judgment of the
court, as asserted in the opinion, I should differ from the conclusion
of the opinion with at least some hesitation.    The erroneous con-
ception of the facts and the misconception of the foundation and
purpose of the decree, as demonstrated by the record, to my mind
clearly show that the case does not fall within the trail blazed by the
opinion, but within the well settled rules of law clearly applicable
to the actual situation before us.    For this case certainly in spirit,
in fact and in truth falls within the catagory of the cases cited.
And the rules of law invoked in the opinion while having applica-
tion to the facts and decree as stated in the opinion, could have no
application to the facts and decree as stated in the record.

In *Miller* v. *Rushforth*, 4 N. J. Eq. 174, the head note fairly
states the case as follows :    A final decree after enrollment, and
execution issued thereon, after a lapse of three years from the date
of the decree, will be set aside for the purpose of correcting a plain
and gross mistake in the master's report, although the defendant
appeared and demurred to the bill of the complaint, and afterwards
suffered a decree pro confesso to be taken against him, and an
exparte report to be made by the master." This case involved the
amount due upon a mortgage.

In *Carpenter* v. *Muchmore*, 15 N. J. Eq. 123, the court, while
holding that "The general rule is that a decree regularly entered
and enrolled cannot be altered except by bill of revivor," say :
"Great liberality has been exercised.    .    .    .    .    where the decree
has been taken pro confesso for the purpose of rectifying mistakes
apparent upon the face of the proceedings, or where there is a clear
case of surprise and merits." This case shows that if the petition
for opening the decree discloses merit, it is in the power of the court
to act.    And it should be here observed that the force of a decree
taken pro confesso had already been decided, by this same court, in
*Robertson* v. *Miller*.

In *Embury* v. *Bergamini*, 24 N. J. Eq. 227, it is said in a case
disclosing merits and surprises :    "The court will not hesitate to
extend relief in such cases.    It will open a regular decree by default,
even after enrollment, for the purpose of giving a defendant an

opportunity to make his defense, where such defense is meritorious, and he has not been heard in relation thereto, either through mistake, accident or surprise."

It seems to me that this case may, in its broadest sense, be regarded as a precedent for the case at bar. The decree heard was enrolled and had the force of a judgment as much as did the decree before us. We think it can be fairly said also that the petition for opening the latter decree discloses both merits and surprise. A bill in equity and an action at law involving the same subject matter, were pending. Neither was tried out upon its merits. Upon the suggestion of a ruling, which the court indicated would be made, with respect to the interpretation of certain words used in a deed, the trial ceased without a determination of the case upon its merits. While it would be unfair to claim that the ruling was not regularly made, in giving a legal construction, it is nevertheless established beyond per adventure that the Justice ruling meant one application of the language, and the counsel for the petitioner understood it to convey an entirely different meaning. So misapprehending the language, he did not except. There was no occasion to. But it soon appeared, both to the sitting Justice and to counsel for the petitioner, that the language was susceptible of two meanings, one broad, the other restrictive. The counsel interpreted the language in the latter sense, that is, that the words "as used," referring to the use of a right of way, should be construed as equivalent to the words "for the same uses as," instead of referring to location.

Everything in connection with this transaction is conceded to have been done in the utmost good faith. In fact, the steps leading to this unfortunate complication seem to have been suggested by the court, and not by counsel. Counsel felt, as counsel had a right to, and always should feel, that the court "could do no wrong;" that the suggestion of the court would result in a speedy and satisfactory solution of the litigation. Things transpired so quickly that counsel could not be justly charged with inattention or negligence or want of skill. If any fault can be laid at his door, it is that of confidence in the court. The voluntary and highly honorable act of the court in withdrawing the decree should be regarded

as conclusive proof of the situation as I have described it. Can there be any question that these facts disclose a case of mistake, accident or surprise? Could aught but sophistry or the most technical discrimination persuade a fair mind to the contrary? In Words and Phrases, Vol. 5, page 4540, is found this definition: "The term 'mistake,' in the sense of a court of equity, is that result of ignorance of law or of fact which has misled a person to commit that which, if he had not been in error, he would not have done." See cases cited. In view of this definition it seems to me that the case at bar falls fairly within *Embury* v. *Bergamini*. All the elements that appear in one, appear in the other; surprise, meritorious defense, not having been heard, and a desire to defend.

In *Van Deventer* v. *Stiger*, 25 N. J. Eq. 224, the head note states the case as follows: "Final decrees set aside and defendant let in to answer, on proof of surprise. A complainant who holds a bond and mortgage given him by the mortgagor, as collateral security only, for a debt alleged to be due to him from the latter, should, in proceedings for the foreclosure of a mortgage, prove his debt, and if it be less than the amount due on the mortgage, take a final decree for the amount of his debt and interest only."

In this case not only was the decree final, but execution had been issued upon it. In *Brinkerhoff* v. *Franklin*, 21 N. J. Eq. 334, where two questions are argued and submitted, the court say: "The first is whether the court will in any case vacate the enrollment and open the decree regularly made in order to let in the defense."

Here the precise issue involved was raised. In answer the court say: "It has long been settled that an enrollment will be vacated and decree opened when the decree has been unjustly made against a right or interest that has not been heard or protected, when this has been done without the laches or the fault of the party who applies." See also many cases cited. This is a case, as will be observed, and we think this remark will apply to most of the other cases cited, which might have been opened on petition for review. But the court did not deem it necessary to put the parties to the trouble and expense of new litigation, where the opening of a decree could fully determine the rights of the parties, in the case already pending.

This is precisely the case before us except that it is strengthened by the fact that there was an action of law, involving the same question as the bill in equity, which was also entered "neither party." In *Mutual Life Insurance Company* v. *Sturges*, 32 N. J. Eq. 678, it is held that in order to present what the case terms "meritorious defense" the defendant is "not bound to satisfy the court now that their defense will be successful, but simply that there is sufficient doubt respecting the justice of. the present decree, to make the facts upon which the defense rests a fit subject of judicial investigation. *Day* v. *Allaire*, 4 Stew. Eq. 317." In *Millspaugh* v. *MacBride*, 7 Paige, 509, the court goes so far as to say, with respect to a petition for opening a decree after enrollment, it will do so. "Where such defense is meritorious, and he has not been heard in relation thereto, either by mistake or accident, or by the negligence of his solicitors." In other words, this case justly holds that in equity a party who has no knowledge of law or procedure, shall not suffer in his rights, even through the negligence of his counsel. This seems to be not only a safe but a sane application of the rules of equity. In law, of course, this cannot be done, for the general rules must be followed. Negligence of counsel must be endured. But equity has been introduced for the express purpose of relieving the rigor of the law, and we can discover no palpable reason why negligence or mistake of counsel is not as much a cause of equitable relief as any other mistake or negligence. The injury in either case is precisely the same. It seems to me that distinction between mistake of law and mistake of fact in equity is a distinction without a difference. Whatever the cause, it is injury which equity seeks to relieve.

It will therefore appear when we examine the cases, that *Thompson* v. *Goulding*, 5 Allen, 81, does not state all the exceptions to the general rule. We also find in *Hall* v. *Lamb*, 28 Vermont, 85, the court using this language: "We entertain no doubt as to the power of the Chancellor to vacate such a decree as was made in this case, even after it is enrolled, for the purpose of giving the defendants the bill on its merits, when they have been deprived of that defense by mistake, accident, or even negligence."

I might cite many more cases from other jurisdictions in corroboration of the theory herein suggested, but inasmuch as the Chancery Courts of New York and New Jersey are entitled to the greatest respect, I regard it as unnecessary to go further in this direction. These states were the earliest to adopt the rules of chancery practice, while the New England states, including Massachusetts and Maine, were very conservative and tardy in this direction, it being within my day that Maine has clothed the court with full equity powers. The rules, therefore, established by these early courts and the great chancellors who regulated their procedure and formulated their rules, should be accorded the authority of final decision in all matters wherein statutory provisions do not intervene.

We find no case in Maine bearing upon the question at issue and none cited in the opinion.   *White* v.  *Gove*, 183 Mass. 333, however is relied upon.   It is decided without any discussion whatever of authorities, and is practically an ex cathedra opinion, only citing *Clapp* v.  *Thaxter*, 7 Gray, 384, already shown to have no bearing as a precedent for the case before us, and *Thompson* v.  *Goulding*, 5 Allen, based upon *Clapp* v.  *Thaxter*.  And it would seem from the statement of the court, that the question at issue in the case at bar was not involved in this case, for the court say :   "If the case is rightly presented, the statute gives an ample remedy by way of appeal."   It further appears that this was the decision of a divided court, as it is said in the last sentence "In the opinion of the majority of the court, the exceptions must be overruled."

It occurs to me that this is a very weak case upon which to base so important a decision as that involved in the case before us.   The court in *White* v.  *Gove* does not undertake to give any reasons for the promulgation of a principle, calculated, as it seems to me, to prolong litigation and to impose an unnecessary burden.   The whole tenor of authority is in opposition to the doctrine of this opinion. It became law weakened by opposition and devoid of authority.

In Maine it is a new question and is to establish, undoubtedly, for all future time, the practice of our court in equity as to whether the sitting Justice, who has made a decree "because of a mistake of fact, and a misunderstanding between the sitting Justice and counsel

for the defendants," which has not been acted upon by the parties, and where the rights of third parties have not intervened, and where the parties, by the allowance of costs, are in no way injured, and are placed in statu quo, shall be allowed to exercise the power of opening such decree, placing the parties in the situation occupied when the decree was made, for the determination of their rights upon the merits of the case. I challenge the suggestion of any possible harm that can ever result to litigants from the enunciation of this doctrine. On the other hand, it is conceivable that injury may result from the doctrine established in the opinion of the Chief Justice. It seems to me, however, that it is a pretty safe rule to establish, either in law or in equity, which in a given case, operates to repair a wrong and establish a right, and upon which in no case can be predicated the possibility of an injury.

No definite rule of procedure for the exercise of the power of the sitting Justice can be formulated. It is the inability to apply such a rule that vests the court with the exercise of authority in each particular case, as the dictates of justice require. There is, however, a broad, but controlling principle fully established by the authorities for governing the action of the court in this class of cases. Chancellor Kent in *Parker* v. *Grant*, supra, says: "This is an application to the grace and favor of the court." In *Robertson* v. *Miller*, supra, it is held: "Applications of this character address themselves to the sound discretion of the court, arising out of each case as it is presented." In *Hall et al.* v. *Lamb et al.*, 28 Vermont, 85, the court say: "In the case of *Wooster* v. *Woodhull*, 1 John Ch. 540, Ch. Kent observed that such applications were addressed to the discretion of the court, etc." So pertinent is *Wooster* v. *Woodhull* in prescribing the ground upon which the court should proceed in this class of cases, that I quote it at length. "The interference of the court, to relieve a party from the consequences of this default, must depend upon sound discretion, arising out of the circumstances of the case. There is no general and positive rule on the subject; and Lord Thurlow observed, in one case (*Williams* v. *Thompson*, 2 Bro. 279) that if a defendant comes in after a bill has been taken pro confesso, upon any reasonable ground of indulgence,

and pays costs, the court will attend to his application, if the delay has not been extravagently long. If the indulgence be great and frequent, there is danger of abuse of the precedent for the purposes of delay. This objection struck Lord Hardwiche with much force in the case of *Cunningham* v. *Cunningham*, (Amb. 89, Dickins, 145) and he directed precedents to be searched on a similar application, where the defendant applied for a rehearing, two years after a decree, which, on his not appearing at the hearing, had been made absolute. He said it was a question on which side the greatest inconvenience would lie; and he, finally, opened the cause in that case, on payment of the costs of the default, and of all subsequent proceedings. Several other cases were referred to by the counsel who made this motion, in which the party, whether plaintiff or defendant, who had made the default at the hearing, and who had, thereby, suffered his bill to be dismissed, or a decree to be made absolute against him, was relieved upon the usual terms, of payment of costs. *Hobson* v. *Cranwell*, Dickens, 61. *Kemp* v. *Squire*, Dickens, 131. *Fry* v. *Prosser*, Dickens, 298. *Ferran* v. *Waite*, Dickens, 782."

But the opinion says that there must be an end to litigation. I agree, with the modification that there must not only be an end but a just end, if in the power of the court to assure it. It seems to me, therefore, that upon the foregoing rules of law it is thoroughly established that when, for any of the reasons stated in the numerous cases cited, a case has not been heard upon its merits, the decree is not based upon a fair hearing, the rights of third parties have not intervened and the parties to the litigation can be placed in statu quo, it is then a matter which addresses itself to the sound discretion of the Chancellor whether the decree may be withdrawn or opened. By the record this is precisely the case before us.

It is well to establish rules but procedure should be conducive not subversive of justice. There is a precept older than equity that the letter of the law killeth, but the spirit giveth life.